State of Nebraska, appellee, v.
Michael T. Caddy, appellant.

628 N.W. 2d 251

Filed June 22, 2001. No. S-00-291.

Michael T. Caddy, pro se.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Michael T. Caddy, the appellant, seeks postconviction relief relating to his convictions for the June 10, 1992, murder of Charles Burns. The primary issue presented in this appeal is whether Caddy is entitled to an evidentiary hearing on his claim that he was deprived of a direct appeal from his 1998 resentencing by ineffective assistance of counsel.

## I. PROCEDURAL HISTORY

The following facts are established by the record in the instant case and the transcripts from Caddy's prior appeals: Where cases are interwoven and interdependent and the controversy involved has already been considered and decided by the court in a former proceeding involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001); *State v. Suggs*, 259 Neb. 733, 613 N.W.2d 8 (2000).

Caddy was first charged in connection with Burns' murder on July 9, 1992. On July 29, Caddy entered pleas of no contest to murder in the second degree and use of a firearm to commit a felony. Caddy was convicted and sentenced to 25 to 40 years' imprisonment on the murder charge and 5 to 15 years' imprisonment on the weapons charge, to be served consecutively. Caddy's sole assignment of error on direct appeal was that the sentences were excessive, and the Nebraska Court of Appeals summarily affirmed the judgment of the district court. See *State v. Caddy*, 1 Neb. App. xlix (case No. S-92-878, March 18, 1993).

In 1995, Caddy filed a motion for postconviction relief, arguing, inter alia, that he was entitled to a new trial because the information filed against him had omitted the element of malice from the crime of murder in the second degree. See *State v. Barfoot*, 248 Neb. 335, 534 N.W.2d 572 (1995), *overruled, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). On July 20, 1995, based on *State v. Barfoot*, the district court set aside both of Caddy's convictions and granted Caddy a new trial. On the same day, the Buffalo County Attorney filed a new information charging Caddy with murder in the first degree and use of a firearm in the commission of a felony. Pursuant to a plea bargain, Caddy pled guilty to murder in the second degree and use of a firearm to commit a felony. Caddy was convicted of those charges, and the sentences imposed were identical to those resulting from his first conviction.

Caddy appealed to the Court of Appeals. Caddy's counsel on appeal was different from his counsel at his pleas, convictions, and sentencing. The Court of Appeals, in a memorandum opinion, affirmed Caddy's convictions, but vacated the sentences and remanded the cause to the district court for resentencing. See *State v. Caddy*, 5 Neb. App. xviii (case No. A-96-077, April 3, 1997). This court overruled Caddy's petition for further review. See *State v. Caddy*, 252 Neb. xxiii (case No. A-96-077, July 23, 1997).

After remand, on November 17, 1997, the district court sentenced Caddy to imprisonment for a period of 40 years on the charge of murder in the second degree and a period of 5 to 15 years on the weapons charge. Caddy appealed, but his appeal was dismissed by this court for failure to file the poverty

affidavit required for an in forma pauperis appeal. See *State v. Caddy*, 256 Neb. xxi (case No. S-98-335, Jan. 27, 1999).

On January 20, 2000, Caddy filed the postconviction motion that is the subject of the instant case, raising several claimed constitutional errors. The district court determined that Caddy's postconviction motion was without merit and denied the motion without an evidentiary hearing. Caddy timely appealed. We moved the appeal to our docket after Caddy filed a notice of a constitutional question, pursuant to Neb. Ct. R. of Prac. 9E (rev. 2000).

## II. ASSIGNMENTS OF ERROR

Caddy has assigned several errors. Those errors have been consolidated and restated and are organized based upon whether they relate to Caddy's convictions, sentences, or direct appeal.

Conviction errors: Caddy assigns that the district court erred in failing to find that (1) it lacked subject matter jurisdiction due to defective informations; (2) Neb. Rev. Stat. § 28-304 (Reissue 1995), the statute defining murder in the second degree, is unconstitutionally vague; (3) there had been prosecutorial misconduct; (4) there had been judicial misconduct; (5) there was a statewide conspiracy against Caddy's rights; (6) Caddy's 1995 pleas were coerced; and (7) Caddy's right to be protected against double jeopardy was violated.

Sentencing error: Caddy assigns that the district court erred in not finding that Caddy had illegal and unauthorized sentences imposed in 1997, in violation of his due process and equal protection rights.

Direct appeal error: Caddy assigns that the district court erred in failing to find that Caddy was denied effective assistance of counsel on direct appeal after Caddy's counsel failed to file a required poverty affidavit, resulting in the dismissal of the direct appeal from Caddy's 1997 resentencing.

## III. STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Becerra*, 261 Neb. 596, 624 N.W.2d 21 (2001); *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001). Whether a claim raised in a postconviction proceeding is procedurally barred is a

question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000).

## IV. ANALYSIS

In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Becerra, supra*; *State v. Narcisse*, 260 Neb. 55, 615 N.W.2d 110 (2000). The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial. *State v. Hess, supra.*

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. Where such an allegation is made, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief. *State v. McCroy*, 259 Neb. 709, 613 N.W.2d 1 (2000).

### 1. ERRORS RELATING TO CONVICTION

#### (a) Subject Matter Jurisdiction

Caddy presents three arguments to support his claim that the district court was without subject matter jurisdiction to originally convict and sentence him. One of these arguments is that § 28-304, the statute defining murder in the second degree, is unconstitutionally vague. This argument will be addressed below in our analysis of Caddy's more specific assignment of error on that issue.

Caddy's second argument supporting this assignment of error is that the information charging him with murder in the second degree was defective and void because it included the element of malice, which is not contained in the statutory definition of the offense. Caddy did not raise this argument in his motion for postconviction relief. Because we do not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief, this argument fails. See *State v. Becerra, supra.*

■ Moreover, Caddy raised the foregoing argument and it was rejected by the Court of Appeals in Caddy's 1996 appeal from his second convictions. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Hess, supra.*

Caddy's third argument is that the information against him was void because after his successful postconviction proceeding, the State initially charged him with murder in the first degree, thus it unlawfully "upped the charge" against him. Brief for appellant at 33. This argument was also raised in and rejected by the Court of Appeals in Caddy's 1996 appeal and cannot be reviewed in Caddy's motion for postconviction relief. See *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001).

### (b) Constitutionality of § 28-304

Caddy argues that his convictions are void because the statute pursuant to which he was convicted, § 28-304, is unconstitutionally vague. We initially note that this argument is barred by virtue of the fact that Caddy could have raised it in his 1996 direct appeal. See, *State v. Hess, supra; State v. Suggs*, 259 Neb. 733, 613 N.W.2d 8 (2000). Moreover, normally, a voluntary guilty plea waives all defenses to a criminal charge. See *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). Finally, as the State argues, Caddy has waived his facial challenges to the validity of the statute by not filing a timely motion to quash in the district court. See, *State v. Kanarick*, 257 Neb. 358, 598 N.W.2d 430 (1999); *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996).

Caddy argues, however, that because the statute is void, his convictions are void ab initio, and that this presents a jurisdictional issue that may be raised at any time in any proceeding. See *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995), *overruled on other grounds, State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999). Assuming for the sake of discussion that Caddy's convictions would be void and subject to collateral attack—a matter we do not address—Caddy's argument fails because § 28-304 is not unconstitutionally vague.

■ The essence of Caddy's argument is that § 28-304 is not distinguishable from Neb. Rev. Stat. § 28-305 (Reissue 1995), which defines the crime of manslaughter. But see *State v.*

*Burlison*, 255 Neb. 190, 196, 583 N.W.2d 31, 36 (1998) (holding that "construction of § 28-304(1) to include only those elements which the Legislature specifically included in its text does not result in constitutional infirmity"). Caddy argues that this violates the void-for-vagueness doctrine, which requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. See *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000).

The void-for-vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applications. *United States v. Lanier*, 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). The Due Process Clause prohibits the states from holding an individual criminally responsible for conduct which he or she could not reasonably understand to be proscribed. *Rose v. Locke*, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975). But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. *Id.* All the Due Process Clause requires is that the law give sufficient warning that people may conduct themselves so as to avoid that which is forbidden. *Id.* The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal. *United States v. Lanier, supra.*

Application of these principles in the case at bar clearly establishes that even if Caddy is correct in arguing that there is ambiguity between §§ 28-304 and 28-305, there is still little question whether § 28-304 provides with reasonable clarity that the intentional killing of another may be criminal. If the general class of offenses to which a statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise. *United States v. Harriss*, 347 U.S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954). This is particularly so where, as here, whatever debate there is would center around the appropriate sentence,

and not the criminality of the conduct. See *Chapman v. United States*, 500 U.S. 453, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991).

The U.S. Court of Appeals for the Eighth Circuit addressed an argument similar to Caddy's in *Knutson v. Brewer*, 619 F.2d 747 (8th Cir. 1980). In that case, an Iowa prisoner sought habeas corpus relief from his conviction for the crime of kidnapping for ransom. The prisoner argued that the Iowa statutes were unconstitutionally vague in failing to distinguish the crime of kidnapping from the crime of kidnapping for ransom and that since the statutes had not clearly notified him that the greater charge of kidnapping for ransom could be brought against him, the statutes were void for vagueness. The Eighth Circuit rejected this argument, stating:

> [W]e think it significant that the issue of construction involved here is not the drawing of a line between legal conduct and illegal conduct. What Knutson did was unlawful under any interpretation of Iowa law, and he makes no contention to the contrary. His position, reduced to its simplest terms, is that he had a right to expect that he would be convicted for kidnapping only, rather than for kidnapping for ransom. This kind of reliance interest is not, in our view, entitled to a great deal of weight. When a person does an act that he well knows to be a violation of some law, and when a statute is later interpreted to cover his conduct in a way that does not do violence to the ordinary understanding of the English language, the Fourteenth Amendment is not offended.

*Id.* at 750. Accord, *McSherry v. Block*, 880 F.2d 1049 (9th Cir. 1989); *Welton v. Nix*, 719 F.2d 969 (8th Cir. 1983); *Sodergren v. State*, 715 P.2d 170 (Wyo. 1986).

Thus, provided that conduct is of a sort known among the lay public to be criminal, a person is not entitled to clear notice that the conduct violates a *particular* criminal statute. It is enough that he or she knows that what he or she is about to do is probably or certainly criminal. See, *U.S. v. White*, 882 F.2d 250 (7th Cir. 1989); *People v Lino*, 447 Mich. 567, 527 N.W.2d 434 (1994).

Even if we were to assume that § 28-304 is not clearly distinguishable from § 28-305, as Caddy alleges, that would not render either statute unconstitutionally vague, as the criminality

of the conduct described is nonetheless clearly established. Therefore, Caddy's postconviction motion does not allege facts that support a constitutional violation, and the district court did not err in denying an evidentiary hearing on this issue. As Caddy has not shown that his convictions are void or that the district court lacked subject matter jurisdiction to enter them, his first two assignments of error are without merit.

### (c) Prosecutorial Misconduct, Judicial Misconduct, and Statewide Conspiracy Against Caddy's Rights

Caddy alleges that he was convicted due to the misconduct of the prosecution and the judges involved in his trial and also argues that this amounted to a "statewide conspiracy" against his rights. We first note that Caddy's appellate brief does not argue that any misconduct has tainted the instant postconviction proceeding; thus, these claims of misconduct are all collateral attacks on the prior proceedings against Caddy.

We also note that Caddy's claim of prosecutorial misconduct was raised and rejected in Caddy's 1996 appeal, and cannot be relitigated here. See *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001). More significant, however, is the fact that Caddy has not assigned in this court that his counsel in the district court in 1996 was ineffective in failing to raise these issues on appeal.

When a plaintiff seeking postconviction relief has different counsel on appeal than at trial, the plaintiff's motion for postconviction relief is procedurally barred if the plaintiff (1) knew of the issues assigned in the postconviction motion at the time of the plaintiff's direct appeal, (2) failed to assign those issues on direct appeal, and (3) did not assign as error the failure of appellate counsel on direct appeal to raise the issues assigned in the postconviction motion. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). Caddy has failed, in the instant case, to assign error regarding his appellate counsel in 1996 and has assigned error only regarding his appellate counsel in 1998 relating to failure to properly perfect the appeal. Consequently, Caddy's arguments are procedurally barred, as they either were or should have been raised in his 1996 and 1998 appeals. Caddy's assignments of error on these issues are without merit.

### (d) Coercion of 1995 Pleas

As with Caddy's other assignments of error relating to his convictions, the voluntariness of his 1995 pleas was certainly known to him at the time of his 1996 appeal. This claim was available to Caddy and should have been raised in his 1996 appeal, and Caddy has not assigned that his direct appeal counsel was ineffective in failing to assign this as error. Consequently, this argument is procedurally barred. See *State v. Williams, supra.*

### (e) Double Jeopardy

Caddy claims that his 1995 conviction was obtained in violation of his rights under the Double Jeopardy Clause. Caddy has likely waived this alleged error by pleading guilty to the offense. See, *United States v. Broce*, 488 U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989); *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991); *State v. Enriquez-Beltran*, 9 Neb. App. 459, 616 N.W.2d 14 (2000) (defendant waives double jeopardy claim on direct appeal and in postconviction proceedings when he or she voluntarily pleads guilty to criminal charges). We also note that this assignment of error was raised in and rejected by the Court of Appeals in Caddy's 1996 direct appeal.

However, we do not address this assignment of error, as Caddy has not argued the alleged error in his brief. Errors that are assigned but not argued will not be addressed by an appellate court. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001).

### 2. ERROR IN SENTENCING

Caddy assigns that the district court's 1997 sentences were not authorized by statute and violated his constitutional rights. However, Caddy did not raise this issue in his motion for postconviction relief. As noted previously, an appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief. *State v. Becerra*, 261 Neb. 596, 624 N.W.2d 21 (2001). Consequently, Caddy's assignment of error is without merit, as the district court could not err in failing to address an issue that was not presented to it.

We also note that this issue should have been presented for appellate review on direct appeal. Caddy argues that he was

deprived of his direct appeal by the ineffective assistance of counsel. If Caddy prevails on that argument, he could receive a new direct appeal in which to raise his arguments regarding the legality of his sentences. Consequently, this assignment of error is subsumed by Caddy's arguments relating to his 1998 direct appeal, to which we now turn.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL

 Caddy argues that he was denied effective assistance of counsel when his attorney on direct appeal from his 1997 resentencing failed to perfect his appeal by filing a required poverty affidavit. See *State v. Parmar*, 255 Neb. 356, 586 N.W.2d 279 (1998) (abrogated in part by statute as recognized in *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000)). Where a defendant is denied his or her right to appeal because counsel fails to perfect an appeal, the proper vehicle for the defendant to seek relief is through the Nebraska Postconviction Act. *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001).

Caddy alleges, and this court's record of the case reflects, that Caddy's attorney in his 1998 direct appeal filed a timely notice of appeal, but failed to perfect the appeal with a timely poverty affidavit. We addressed a similar situation in *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000), in which a defendant was denied a direct appeal because his attorney failed to file a poverty affidavit. We concluded, as a matter of law, that the defendant was denied his constitutional right to effective assistance of counsel and was entitled to postconviction relief. See *id.* Based on *State v. Trotter*, there can be little doubt that Caddy's postconviction petition in the instant case alleges facts which, if proved, would constitute an infringement of his constitutional rights.

The district court in the instant proceeding resolved this issue by assuming that Caddy's counsel had been ineffective, but determining that Caddy had not been prejudiced because Caddy's appeal would have been found to be without merit. Generally, in order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. See, *State v. Becerra, supra*; *State v. Hess, supra*.

 However, this court rejected an almost identical argument in *State v. Trotter, supra*. We held that "after a trial, conviction, and sentencing, if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief." *Id.* at 222, 609 N.W.2d at 41. Based upon *State v. Trotter*, we conclude that the district court erred in determining that Caddy was not prejudiced by the alleged failure of his attorney to perfect his 1998 direct appeal. Caddy's final assignment of error has merit.

 The district court has jurisdiction to exercise the power to grant a new direct appeal where the evidence establishes a denial or infringement of the right to effective assistance of counsel at the direct appeal stage of the criminal proceedings. See *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000). However, in this case, the evidence has not yet established a denial or infringement of Caddy's right to effective assistance of counsel, because the district court did not hold an evidentiary hearing on Caddy's postconviction motion.

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. McCroy*, 259 Neb. 709, 613 N.W.2d 1 (2000). Because Caddy has alleged facts which, if proved, would constitute an infringement of his right to effective assistance of counsel on direct appeal, Caddy is entitled to an evidentiary hearing to determine if he should be granted a new direct appeal with respect to the narrow issues related to his November 1997 resentencing. See *id.*

## V. CONCLUSION

The district court erred in determining that Caddy was not entitled to an evidentiary hearing regarding his claim that he was denied effective assistance of counsel on direct appeal from his resentencing. The judgment of the district court is reversed to that extent, and the cause is remanded to the district court with directions to conduct an evidentiary hearing, which is to be limited to the question whether Caddy was denied effective assistance of counsel in that his attorney failed to perfect his direct

appeal from his resentencing by filing the required poverty affidavit. Caddy's other assignments of error are without merit, and the judgment of the district court is otherwise affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.