275 Neb. 481
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT,
v.
RICKEY L. JIM, APPELLANT AND CROSS-APPELLEE.
No. S-06-1217.
Supreme Court of Nebraska.
Filed April 18, 2008.
Deborah D. Cunningham for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Following a jury trial in the district court for Douglas County, Rickey L. Jim was convicted of child abuse resulting in death and sentenced to 40 to 50 years in prison. His conviction and sentence were affirmed by the Nebraska Court of Appeals.[1] In this postconviction proceeding, Jim alleged that the attorney who represented him on direct appeal was ineffective in failing to assign and thereby preserve his claim of ineffective assistance of trial counsel. Without conducting an evidentiary hearing, the district court ordered a new direct appeal. We granted the State's petition to bypass. We conclude that the district court erred in ordering postconviction relief without first conducting an evidentiary hearing and making findings of fact and conclusions of law. We also conclude that because of the nature of Jim's postconviction claim, a new direct appeal is not an appropriate form of postconviction relief even if Jim's claim is proved to have merit. We therefore reverse, and remand to the district court for further proceedings.

BACKGROUND
The facts underlying Jim's conviction are set forth in detail in the opinion of the Nebraska Court of Appeals resolving Jim's direct appeal[2] and need not be fully reiterated here. We summarize those facts which relate directly to this postconviction proceeding.
Jim and Candice Bryan resided together with Bryan's two minor children. Emergency medical personnel found the deceased body of the younger child, Layne Bryan Banik, on the floor of his bedroom at approximately 10:50 a.m. on May 8, 2001.
Jim was arrested on August 23, 2001, and charged with child abuse resulting in death. During its opening statement at Jim's trial, the State alluded to injuries Layne suffered in the months prior to his death. Defense counsel objected, and opening statements were suspended while the court held a hearing on the admissibility of the prior injuries. The matter was resolved without a ruling because the State decided not to introduce evidence of prior injuries.
During the trial, the State presented portions of videotaped interviews police conducted with Jim. Defense counsel and the prosecutor had agreed to redact a portion of one of the interviews in which Jim mentioned long bone fractures Layne had previously sustained. The videotape presented to the jury, however, included the following statement by Jim to police officers, which should have been redacted pursuant to the parties' agreement: "Well now that you guys tell me his arm is broke, it's something you know, maybe I did pull his arm too hard or you know, I've, if, if something like that happened, I didn't mean for it to happen you know."
Jim's counsel objected to this portion of the videotape and moved for a mistrial. He argued that while he believed the presentation of the redacted passage was inadvertent, it was nevertheless "extremely prejudicial." The court stated that it was not inclined to grant the mistrial but would consider an appropriate admonition to the jury. After presentation of the videotaped interview was completed, the court admonished the jury as follows:
[T]he Court gives the following admonition concerning audio- and videotaped statements made by the defendant to police officers.
During the course of the interrogation you heard statements made by the police officers to the defendant, including statements attributed to third parties. These statements are not offered for the truth of the matter contained in those statements and shall not be considered by you for that purpose. They're admitted solely to demonstrate the method of interrogation of the defendant and to put his statements in context.
At a bench conference held immediately following this admonition, defense counsel advised the court that he elected to "rest on my motion for mistrial" and not request an additional admonishment regarding the inadvertent presentation of the redacted passage, because he believed that any such admonishment would necessarily highlight the prejudicial information. The jury returned a verdict of guilty, and Jim was convicted and sentenced as noted above.
Jim's counsel on direct appeal was not the same attorney who had represented him at trial. Appellate counsel assigned several trial errors, including a claim that the district court erred in denying Jim's motion for a mistrial following the inadvertent presentation of the redacted portion of the interview.[3] However, appellate counsel did not raise any issue of ineffective assistance of trial counsel.[4]
The Court of Appeals affirmed the conviction, finding no merit in any of Jim's assignments of error.[5] In concluding that the district court did not abuse its discretion in denying Jim's motion for mistrial, the court reasoned that "the damaging effect of the statement was removed by the court's instruction to the jury and no substantial miscarriage of justice actually occurred . . . nor was a fair trial prevented."[6]
Jim filed a motion for postconviction relief, arguing that his trial counsel was ineffective in several respects and also that his appellate counsel was ineffective in failing to assert and preserve his claim of ineffective assistance of trial counsel on direct appeal. The record includes no indication that an evidentiary hearing was held. Approximately 6 months after Jim's motion was filed, the court entered an order finding, on the basis of its review of "the applicable pleadings, briefs, statutes, and case law[,] that said motion for post-conviction relief should be granted, and that [Jim] should be afforded a direct appeal to raise the issue of ineffective assistance of trial counsel." The order further stated that Jim's "right to appeal is reinstated" and gave him 30 days to "submit an appeal."
Jim filed a timely notice of appeal, and the State cross-appealed.

ASSIGNMENTS OF ERROR
Jim proceeds as if he were before this court on a direct appeal. He assigns, restated, that his trial counsel was constitutionally ineffective in his handling of the inadvertent presentation of the redacted portions of his videotaped interview.
The State cross-appeals and assigns, restated and consolidated, that the district court erred in granting postconviction relief without conducting an evidentiary hearing, in ordering a reinstated direct appeal, and in not dismissing Jim's postconviction motion.

STANDARD OF REVIEW
[1] The dispositive procedural issues presented by the State's cross-appeal arise under the Nebraska Postconviction Act.[7] Statutory interpretation presents a question of law, and an appellate court resolves such issues independently of the lower court's conclusions.[8]

ANALYSIS
The State's cross-appeal raises two key procedural issues: first, whether a district court may grant any form of postconviction relief without first conducting an evidentiary hearing and making findings of fact and conclusions of law and, second, whether a new direct appeal is an appropriate form of postconviction relief where a direct appeal was resolved on its merits, but the defendant subsequently claims that appellate counsel was ineffective in not raising certain issues on appeal.

EVIDENTIARY HEARING
[2-5] The Nebraska Postconviction Act[9] is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights.[10] In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[11] When a verified motion for postconviction relief is filed in the court which imposed the sentence, the act requires a form of judicial triage:
Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.[12]
Under the act, an evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution.[13] However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.[14] If the court grants an evidentiary hearing in a postconviction proceeding, it is obligated to "determine the issues and make findings of fact and conclusions of law with respect thereto."[15]
Here, the district court granted postconviction relief without first conducting an evidentiary hearing and making findings of fact and conclusions of law. That is not permitted by the act and constitutes reversible error. The State argues on cross-appeal that the district court erred in not dismissing the motion for postconviction relief on the ground that the files and records established that Jim was not entitled to postconviction relief because it contained only conclusory allegations of ineffective assistance of counsel. Jim replies in his brief that the order granting postconviction relief was "submitted by the parties and approved by the District Court."[16] The nature of the submission by the parties is not apparent from the record, which includes only the bill of exceptions from the original criminal proceeding.
We note that the Nebraska Court of Appeals has recently decided a case involving a similar procedural issue. In State v. Murphy,[17] the defendant did not file a timely appeal following her conviction. In a subsequent postconviction proceeding, she and the State stipulated that she should be permitted to file an appeal and the district court entered an order granting the stipulation and permitting the appeal to be filed. The record on appeal included the stipulation and order but did not include the motion for postconviction relief. The only record before the Court of Appeals was a stipulation that provided no facts pertaining to any claimed deprivation of constitutional rights, but, rather, "only the bare conclusory agreement that `an Appeal' be allowed," and the order of the district court implementing the stipulation.[18] Noting that parties cannot stipulate to matters of law, the Court of Appeals held that "the stipulation was not sufficient to invoke the district court's jurisdiction pursuant to the postconviction statute and constituted an invalid attempt to extend the time for appeal."[19] The court concluded that it therefore lacked appellate jurisdiction and dismissed the appeal.
This case differs from Murphy in that the record includes a verified motion for postconviction relief. The filing of this motion was sufficient to invoke the court's subject matter jurisdiction under the Nebraska Postconviction Act. But the court erred in the exercise of its jurisdiction by granting postconviction relief without conducting an evidentiary hearing and making findings of fact and conclusions of law.
The determination of whether a motion for postconviction relief alleges facts which, if proved, would entitle the movant to relief should be made in the first instance by the district court. Because of the unusual procedural route by which this appeal comes before this court, we cannot be certain that this issue was ever addressed by the district court. Thus, on remand, the district court should determine the sufficiency of Jim's factual allegations and whether the files and records of the case affirmatively show that he is entitled to no relief. If the factual allegations are sufficient and are not refuted by the files and records, the court should conduct an evidentiary hearing and make findings of fact and conclusions of law with respect to the merits of Jim's postconviction claims.

NEW DIRECT APPEAL
[6] An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[20] Because we reverse, and remand this cause for further proceedings which may result in an order of postconviction relief, we address the State's argument that a "reinstated" or "new" direct appeal would be an inappropriate form of postconviction relief in this case under any circumstance.
[7-9] Where a defendant is denied his or her right to appeal because counsel fails to perfect an appeal, the proper vehicle for the defendant to seek relief is through the Nebraska Postconviction Act.[21] The specific relief in this circumstance is a "new direct appeal," rather than a "reinstated appeal."[22] The power to grant a new direct appeal is implicit in § 29-3001, and the district court has jurisdiction to exercise such a power where the evidence establishes a denial or infringement of the right to effective assistance of counsel at the direct appeal stage of the criminal proceedings.[23] Thus, we held in State v. Trotter[24] that if counsel deficiently fails to file or perfect an appeal after being so directed by the criminal defendant after a trial, conviction, and sentence, prejudice to the defendant will be presumed under the test articulated in United States v. Cronic,[25] and need not be proved under the two-pronged test for determining ineffective assistance of counsel under Strickland v. Washington.[26] This is so because the failure to perfect an appeal results in a complete denial of the assistance of counsel at a critical stage of the criminal proceeding.[27]
[10] But this is not such a case. Jim's appellate counsel perfected a direct appeal from his conviction and sentence, and the Court of Appeals resolved all the issues presented by that appeal. Jim's postconviction claim is that appellate counsel was ineffective in failing to raise the additional issue of ineffective assistance of trial counsel. Such a failure can have significant consequences, because under Nebraska law, in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.[28] Jim does not claim that he was completely denied the effective assistance of counsel on appeal, only that counsel failed to raise one specific issue.
In State v. Meers,[29] we held that a new direct appeal was not an appropriate form of relief as to a postconviction claim of ineffective assistance of trial counsel occurring prior to conviction. We noted that in such cases, a convicted defendant has not been completely deprived of a direct appeal, and that allowing a new direct appeal would not achieve the objective of restoring the convicted defendant's rights and status at the time of counsel's deficient performance.
[11] The same reasoning applies here. We hold that a new direct appeal is not an appropriate postconviction remedy where a criminal defendant claims that appellate counsel was ineffective in failing to raise and thus preserve a claim of ineffective assistance of trial counsel. Rather, such "layered claims"[30] must be fully adjudicated in the postconviction proceeding using the Strickland v. Washington[31] test for determining the effectiveness of counsel. In this type of claim, evaluation of the performance of appellate counsel necessarily requires an evaluation of the performance of trial counsel, because appellate counsel could not have been ineffective in failing to raise a nonmeritorious claim that trial counsel was ineffective.[32] If a court determines that appellate counsel was ineffective in failing to raise a meritorious claim of ineffective assistance of trial counsel, the appropriate postconviction remedy would be to vacate and set aside the judgment and either discharge, resentence, or grant a new trial as may be appropriate to the specific claim.[33]

CONCLUSION
For the reasons discussed, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] State v. Jim, 13 Neb. App. 112, 688 N.W.2d 895 (2004).
[2] Id.
[3] Id.
[4] Id.
[5] Id.
[6] Id. at 131, 688 N.W.2d at 912.
[7] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995).
[8] State v. Bossow, 274 Neb. 836, 744 N.W.2d 43 (2008); State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007).
[9] §§ 29-3001 to 29-3004.
[10] State v. Marshall, 272 Neb. 924, 725 N.W.2d 834 (2007); State v. McDermott, 267 Neb. 761, 677 N.W.2d 156 (2004).
[11] State v. Harris, 274 Neb. 40, 735 N.W.2d 774 (2007); State v. Moore, 272 Neb. 71, 178 N.W.2d 537 (2006).
[12] § 29-3001.
[13] See, id.; State v. McLeod, 274 Neb. 566, 741 N.W.2d 664 (2007).
[14] State v. Reeves, 258 Neb. 511, 604 N.W.2d 151 (2000).
[15] § 29-3001; State v. Costanzo, 235 Neb. 126, 454 N.W.2d 283 (1990).
[16] Reply brief for appellant at 2.
[17] State v. Murphy, 15 Neb. App. 398, 727 N.W.2d 730 (2007).
[18] Id. at 404, 727 N.W.2d at 735.
[19] Id.
[20] State v. Kula, 260 Neb. 183, 616 N.W.2d 313 (2000).
[21] State v. Meers, 267 Neb. 27, 671 N.W.2d 234 (2003); State v. Caddy, 262 Neb. 38, 628 N.W.2d 251 (2001).
[22] State v. McCracken, 259 Neb. 1049, 615 N.W.2d 882 (2000) (published order).
[23] See, State v. Bishop, 263 Neb. 266, 639 N.W.2d 409 (2002); State v. McCracken, 260 Neb. 234, 615 N.W.2d 902 (2000), abrogated on other grounds, State v. Thomas, 262 Neb. 985, 637 N.W.2d 632 (2002).
[24] State v. Trotter, 259 Neb. 212, 609 N.W.2d 33 (2000).
[25] United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).
[26] Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[27] See State v. Trotter, supra note 24. See, also, Castellanos v. U.S., 26 F.3d 717 (7th Cir. 1994) (approved in Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).
[28] State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[29] See State v. Meers, supra note 21.
[30] State v. Jackson, ante p. 434, ___ N.W.2d ___ (2008).
[31] Strickland v. Washington, supra note 26.
[32] State v. Jackson, supra note 30; State v. Al-Zubaidy, 263 Neb. 595, 641 N.W.2d 362 (2002); State v. Bishop, supra note 23; State v. Williams, 259 Neb. 234, 609 N.W.2d 313 (2000).
[33] § 29-3001. See State v. Bishop, supra note 23.