IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. BALVIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
SONNY D. BALVIN, APPELLANT.

Filed July 15, 2014.    No. A-13-529.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

Sonny D. Balvin, pro se.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This is a postconviction appeal. In 2009, Sonny D. Balvin was convicted by a jury of first degree sexual assault. As a result of his conviction, he was sentenced to 24 to 36 years' imprisonment. In addition, the trial court found that the offense was aggravated and justified the imposition of lifetime community supervision after Balvin's release from prison.

On direct appeal, this court affirmed Balvin's conviction, but reversed his sentence and remanded the case back to the district court in order for a jury to make a finding concerning whether Balvin's offense was aggravated and, thus, made him subject to the imposition of lifetime community supervision. *State v. Balvin*, 18 Neb. App. 690, 791 N.W.2d 352 (2010) (*Balvin I*). On remand, the district court amended the previously imposed sentence by removing the imposition of lifetime community supervision. Balvin remained sentenced to 24 to 36 years' imprisonment. Balvin appealed from the amended sentencing order. This court affirmed the sentence. *State v. Balvin*, No. A-11-244, 2011 WL 6251088 (Neb. App. Dec. 13, 2011) (selected for posting to court Web site) (*Balvin II*).

Balvin now appeals the district court's dismissal of all of his claims for postconviction relief without an evidentiary hearing. For the reasons set forth below, we affirm the district court's decision to deny Balvin an evidentiary hearing for all of his postconviction allegations.

## II. BACKGROUND

The following summary of the original criminal proceedings against Balvin is taken directly from our opinion in *Balvin I*:

> The State filed a criminal complaint charging Balvin with first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2008). The charge against Balvin stems from an incident which occurred in March 2009. Evidence adduced at trial revealed that on the night of March 9, 2009, Balvin offered a ride to A.R., who had been walking from a friend's house to the home of her cousin. She and Balvin proceeded to drive to a liquor store where Balvin bought bottles of beer. They continued to drive around the city of Lincoln, Nebraska, drinking beer and talking. Eventually, Balvin drove to a secluded, rural area, where he parked his car on the side of a dirt road.
>
> The events that transpired after Balvin parked the car on the side of the road were disputed at trial. A.R. testified that Balvin asked her to have sex with him. When she told him that she did not want to, he told her that she was either "going to give it to him or he was going to take it." He then lunged toward her. She testified that she was scared and unable to run away because there was nowhere to go. She testified that she had no choice but to do what he asked of her. A.R. testified that Balvin forced her to engage in numerous sexual acts. She testified that after approximately 45 minutes, Balvin drove her to her cousin's house. When she arrived, she told her cousin what happened and called the police.
>
> Balvin did not testify at trial, nor did he offer any evidence in his defense. However, throughout the cross-examination of the State's witnesses and during closing arguments, Balvin's trial counsel indicated that Balvin did not dispute that he and A.R. engaged in sexual intercourse on the night in question. Balvin contended that he had picked up A.R. on March 9, 2009, because she was a prostitute. He argued that A.R. consented to having sexual intercourse with him and reported a sexual assault to the police only because Balvin refused to pay her after the incident.
>
> After hearing all of the evidence, the jury convicted Balvin of first degree sexual assault. The district court subsequently sentenced Balvin to 24 to 36 years' imprisonment.

18 Neb. App. at 693-94, 791 N.W.2d at 360-61.

As we discussed above, Balvin appealed from his conviction and sentence. See *Balvin I*. By the time of this appeal, Balvin had different counsel than his trial attorney. In his appellate brief, Balvin alleged, among other things, that his trial counsel had been ineffective in numerous respects. Upon our review, we concluded that the record was insufficient to review the majority of Balvin's claims of ineffective assistance of counsel. However, we specifically found that Balvin was not denied effective assistance of counsel when substitute counsel appeared on Balvin's behalf during a pretrial hearing, when counsel failed to refresh A.R.'s memory about a prior false report that she had been sexually assaulted, when counsel made a motion to dismiss at the close of the evidence, or when counsel failed to object to the State's closing argument.

In August 2012, Balvin filed a pro se motion for postconviction relief. The motion alleged that Balvin's trial counsel and his appellate counsel were ineffective in numerous respects. Specifically, the motion alleged that trial counsel was ineffective in failing to call certain witnesses to testify about A.R.'s prior false report of sexual assault; failing to make a hearsay objection during certain testimony of Tiffany Blaker, Balvin's fiance at the time of the incident; failing to call Balvin's mother to testify as a witness in order to rebut the assertions made by Blaker; and failing to properly impeach Blaker's testimony.

In addition to these allegations, the postconviction motion alleged that Balvin's appellate counsel was ineffective in failing to raise the following issues on direct appeal: the admissibility of testimony about Balvin's sexual relationship with Blaker, the admissibility of letters written by Balvin while he was awaiting trial; trial counsel's ineffectiveness in failing to call certain witnesses to testify about A.R.'s prior false report of sexual assault, and trial counsel's ineffectiveness in failing to make a hearsay objection during certain portions of Blaker's testimony.

The district court denied Balvin's motion without an evidentiary hearing. In its order, the court stated:

> [Balvin's] rights under the United States and Nebraska Constitutions were neither denied nor infringed so as to render his conviction void or voidable. . . . The records and files in this case clearly show [Balvin] is entitled to no relief. Therefore, it is the conclusion of the court that [Balvin's] motion for postconviction relief should be overruled and denied.

Balvin appeals.

### III. ASSIGNMENT OF ERROR

On appeal, Balvin alleges, restated and consolidated, that the district court erred in denying his motion for postconviction relief without an evidentiary hearing.

### IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Branch*, 286 Neb. 83, 834 N.W.2d 604 (2013).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011).

### V. ANALYSIS

Balvin appeals the district court's decision to deny his motion for postconviction relief without an evidentiary hearing. An evidentiary hearing on a motion for postconviction relief is

required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable. *State v. Branch, supra*. An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *Id*. If the defendant makes sufficient allegations of a constitutional violation which would render the judgment void or voidable, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

In his brief on appeal, Balvin has narrowed his postconviction claims to two allegations of ineffective assistance of trial counsel and five allegations of ineffective assistance of appellate counsel. Specifically, he alleges that trial counsel was ineffective in (1) failing to adequately argue that pertinent statutory and case law permitted the use of extrinsic evidence to prove A.R.'s prior false statement of sexual assault and (2) failing to call the police officer who took A.R.'s prior false statement to testify at trial.

Balvin also alleges that appellate counsel was ineffective in failing to raise on direct appeal certain claims of ineffective assistance of trial counsel and certain assertions regarding erroneous evidentiary rulings made by the trial court. Specifically, he alleges that his appellate counsel should have raised the following issues on direct appeal: (1) trial counsel was ineffective in not calling the police officer who took A.R.'s prior false statement to testify at trial; (2) trial counsel was ineffective in failing to properly object to Blaker's testimony concerning a telephone call between herself, Balvin, and Balvin's mother; (3) the trial court erred in overruling an "original writing objection" to Blaker's testimony about the telephone call; (4) the trial court erred in admitting into evidence letters written by Balvin while he was awaiting trial; and (5) the trial court erred in permitting Blaker to testify about her and Balvin's physical relationship.

## 1. INEFFECTIVE ASSISTANCE
### OF TRIAL COUNSEL

Balvin's allegations that he received ineffective assistance of trial counsel are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct appeal. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). Balvin was represented by different counsel than his trial attorney on direct appeal. And, while he did raise some allegations of ineffective assistance of trial counsel in his direct appeal, he did not specifically assert that his trial counsel was ineffective either in failing to adequately argue that pertinent statutory and case law permitted the use of extrinsic evidence to prove A.R.'s prior false statement of sexual assault or in failing to call the police officer who took A.R.'s prior false statement to testify at trial, as he now asserts in this appeal. Because he did not raise these issues in his direct appeal, he is now procedurally barred from raising the issues.

Moreover, we must note that Balvin's assertion that his trial counsel was ineffective in failing to adequately argue that pertinent statutory and case law permitted the use of extrinsic evidence to prove A.R.'s prior false statement of sexual assault was not raised in his postconviction motion submitted to the district court. As a result, this assertion, in addition to being procedurally barred, is also not properly before this court for consideration. See *State v.*

*Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001) (holding that appellate court will not consider as assignment of error question not presented to district court for disposition through defendant's motion for postconviction relief).

We conclude that the district court did not err in denying Balvin an evidentiary hearing as to his allegations of ineffective assistance of trial counsel.

## 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011). Appellate counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. When, as here, the case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the *Strickland* test. *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

Under the *Strickland* test, the defendant has the burden to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010). The two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, may be addressed in either order. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011).

When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McGhee, supra*.

We now turn to Balvin's specific allegations of ineffective assistance of appellate counsel.

### (a) A.R.'s Prior False Report of Sexual Assault

Prior to trial, the State filed a motion in limine seeking to preclude Balvin from offering evidence that A.R. allegedly had previously made a false report that she had been sexually assaulted. This previous false report occurred approximately 11 years prior to trial, when A.R. was 10 years old. The district court granted the State's motion, but indicated that it would revisit the issue prior to A.R.'s testimony at trial.

Just prior to A.R.'s testifying at trial, the court indicated, "I'm inclined to allow [Balvin's counsel] to inquire into whether [A.R.] had made such an allegation and that it turned out it was not true . . . ." The court later clarified its ruling by informing counsel, "[I]f you ask [A.R.] if she has made a prior allegation of attempted sexual contact when she was ten years old and she says, no, . . . that ends it."

During Balvin's cross-examination of A.R., counsel asked her, "[A]s we sit here today, do you recall that you reported that you had been sexually assaulted during that incident?" A.R. responded that she did not remember such a report. Counsel was not permitted to ask further questions regarding the prior false report in the presence of the jury, and counsel was not permitted to submit into evidence a copy of the police report regarding A.R.'s previous allegation of sexual assault.

In his direct appeal, Balvin alleged that the district court erred in prohibiting him from submitting evidence concerning the prior false report during his cross-examination of A.R. Upon our review, we concluded that the district court did not abuse its discretion in excluding evidence of the prior false report. *Balvin I*. In coming to this conclusion, we relied on Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 2008). That rule provides as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness, or (b) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Based on the language of rule 608(2), we held that the district court did not err in prohibiting counsel from further questioning A.R. about the prior false report after she indicated she did not remember or in failing to admit into evidence copies of the police report regarding the prior false report. *Balvin I*. The police report was extrinsic evidence which related only to A.R.'s credibility.

In his motion for postconviction relief and in this appeal, Balvin alleges that his appellate counsel was ineffective for failing to raise on direct appeal the claim that his trial counsel was ineffective in not calling the police officer who authored the police report regarding A.R.'s prior sexual assault report to testify. In his brief on appeal, Balvin specifically claims, "The law was clearly established allowing [the police officer] to testify regarding his interviews and investigative reports concluding [A.R.] had made prior false allegations of being sexually assaulted." Brief for appellant at 26. Balvin's assertion has no merit.

As we explained in *Balvin I*, rule 608(2) explicitly prohibits the use of extrinsic evidence to prove specific instances of conduct which relate only to the credibility of a witness. Balvin alleges that his trial counsel was ineffective in failing to call a witness to testify about A.R.'s alleged prior false report of sexual assault and, thus, about A.R.'s lack of credibility concerning her current report of sexual assault. Stated another way, Balvin alleges that his trial counsel was ineffective for failing to offer extrinsic evidence to prove a specific instance of A.R.'s conduct which related only to A.R.'s credibility. Such evidence is clearly not admissible pursuant to rule 608(2). Just as the police report regarding the prior false report was considered extrinsic evidence and was not admissible, testimony from a witness about that report is also extrinsic evidence and is not admissible.

Accordingly, Balvin's trial counsel's performance was not deficient when he failed to offer the testimony of the police officer. Such offer would not have been successful pursuant to the language of rule 608(2). Because any offer of the testimony of the police officer would not

have been successful, Balvin's appellate counsel was not deficient in failing to raise this issue in his direct appeal.

### (b) Admissibility of Recordings From Jailhouse Telephone Calls

At trial, one of the State's key witnesses was Blaker, Balvin's fiance at the time of the sexual assault. Sometime after Balvin was arrested, Blaker ended her relationship with Balvin. However, prior to the end of their relationship, Balvin telephoned Blaker from jail on numerous occasions. These telephone conversations were recorded by jail personnel. During Blaker's testimony, the State offered into evidence a recording of six of the telephone conversations between Balvin and Blaker. Before any of the recordings were played for the jury, Balvin's counsel objected generally to the admission of the recordings, arguing, "I believe the CD in question does contain hearsay and does contain statements other than that of . . . Balvin." The district court overruled the objection.

During the second telephone conversation played for the jury, Blaker telephoned Balvin's mother on another telephone line so that Blaker was able to talk to both Balvin and his mother. Blaker then relayed to Balvin his mother's questions and comments. As a part of this dialog, Tiffany told Balvin that his mother wanted to know whether the girl he picked up on the night in question was a prostitute who was angry that she did not get paid. Balvin responded, "That is really close." Balvin did not make any objections at the time this recording was played for the jury.

After the second telephone conversation was played for the jury, the State questioned Blaker about the content of the recording as follows:

Q: And you are trying to relay what [Balvin's mother] says to . . . Balvin, her son?
A: Yes.
Q: And it was [his mother] that brought up the possibility that he had picked up a prostitute.
A: Yes.

After this line of questioning, Balvin's trial counsel objected to the form of the question, because counsel did not "think that's what was said" on the recording and because "the tape speaks for itself." The court overruled the objection.

In Balvin's direct appeal, his appellate counsel challenged the admissibility of Blaker's testimony about the substance of the telephone conversation between herself, Balvin, and Balvin's mother. Counsel alleged that such testimony included inadmissible hearsay statements, including Blaker's statement that Balvin's mother was the one who initially suggested to Balvin his defense that A.R. was a prostitute. In *Balvin I*, we found that Balvin's assertion concerning Blaker's testimony about the telephone conversation was not preserved for our review because Balvin's trial counsel did not make a hearsay objection during Blaker's testimony.

In his postconviction motion and in this appeal, Balvin now alleges that his appellate counsel was ineffective in failing to assign as error his trial counsel's ineffectiveness in not objecting to Blaker's testimony about the telephone call as hearsay. We conclude that Balvin's assertion that his appellate counsel was ineffective does not have merit.

First, Blaker's testimony about the substance of the conversation between herself, Balvin, and Balvin's mother was not hearsay. Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2008), defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Blaker's testimony that Balvin's mother suggested that A.R. was a prostitute was not offered for the truth of the matter asserted. Stated another way, the State was not trying to prove the truth of the statement, that A.R. was a prostitute, but, rather, it was simply trying to demonstrate the fact that Balvin's mother made such a statement and the effect that the statement had on Balvin. Because Blaker's testimony was not hearsay, an objection to that testimony on the basis of hearsay would not have been successful. Accordingly, even if Balvin's appellate counsel had argued on appeal that trial counsel was ineffective for failing to make a hearsay objection, this argument would not have been successful. Balvin's appellate counsel was not ineffective in this regard.

Second, we must note that the jury heard the recording of the telephone conversation between Blaker, Balvin, and Balvin's mother. As such, they heard Blaker ask Balvin all of his mother's questions, including the question about A.R.'s being a prostitute. Blaker's testimony on this subject was, as a result, cumulative in nature, and any error in its admission would have been harmless.

Balvin's appellate counsel was not ineffective in failing to raise on direct appeal the issue of trial counsel's ineffectiveness in not making a hearsay objection during Blaker's testimony about the telephone call. The assertion would not have been successful because Blaker's testimony was not hearsay and was cumulative to the actual recording of the telephone calls.

In this appeal, Balvin also asserts that his appellate counsel was ineffective in failing to raise, on direct appeal, the district court's overruling of trial counsel's "original writing objection" to Blaker's testimony about the telephone conversation. However, Balvin did not raise this issue in his postconviction motion, and as such, this issue is not properly before us. See *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001).

(c) Admissibility of Letters
Written From Jail

At trial, the State offered into evidence excerpts from letters written by Balvin to Blaker, while he was in jail awaiting trial. Balvin's trial counsel objected to the admission of these letters, arguing that the letters contained hearsay and that they were not relevant. The district court overruled Balvin's objections and admitted the letters into evidence. Copies of the letters were provided to each juror, and the members of the jury were given time to read the content of all the letters.

In his direct appeal, Balvin did not raise the issue of the admissibility of these letters. However, in his motion for postconviction relief and in this appeal, Balvin asserts that his appellate counsel was ineffective for failing to raise this issue in his direct appeal, because the letters should not have been admitted into evidence because they contained hearsay and were not relevant. He also asserts that the erroneous admission of the letters prejudiced his defense. Upon our review, we conclude that Balvin's assertions have no merit.

The letters did not contain hearsay. They were authored entirely by Balvin, and pursuant to rule 801(4) of the Nebraska Evidence Rules, a party's own statement is not hearsay when it is

offered against him at trial. Rule 801(4) states, in relevant part, "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . his own statement, in either his individual or a representative capacity . . . ." Blaker's testimony about the letters clearly indicated that the letters were in Balvin's handwriting and that they had been authored entirely by him.

Having found that the letters were not hearsay, we next turn to Balvin's assertion that the letters were inadmissible because they were not relevant. The exercise of judicial discretion is implicit in determining the relevance of evidence. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Evidence must be relevant to be admissible. See *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See *id*.

In his brief to this court, Balvin asserts that the letters:

[D]emonstrated only general feelings of remorse and discussion of legitimate development of his defense. The letters in no way constituted direct assertions regarding any material facts or admissions of guilt, nor did they provide a basis for any reasonable inferences in that regard.

Brief for appellant at 33. We have reviewed the letters in their entirety, and we must disagree with Balvin's characterization of the substance of the letters.

First, the letters contain repeated instances of Balvin's apologizing to Blaker for what he has done and how he has hurt her and their relationship. Specifically, Balvin stated at various points in the letter, "I did a terrible thing to us"; "it was a mistake . . . people will never look at me the same again no matter what"; and "I ask myself, everyday why? How could I do this?" In addition, he told Blaker, "No more will I do anything to losse [sic] our freedom or to get in trouble." While these statements could be read to refer only to Balvin's guilt for cheating on Blaker with A.R., as he suggested during his criminal trial, the statements could also be read to evidence a consciousness of guilt on Balvin's part for his sexual assault on A.R. In addition, Balvin appears to admit some remorse for his actions. Ultimately, these statements are relevant because the inferences that can be drawn from them are indicative of Balvin's guilt.

In addition to Balvin's statements of guilt and remorse, the letters also contain directions to Blaker about how to testify at a deposition concerning Balvin's criminal charges. He tells Blaker what to say and then informs her that "if everybody story's [sic] are the same it looks good." He also tells her, "I hope you stick up for me like we talked about how good I was to you and our Relationship [sic]." These statements could be read to indicate that Balvin was trying to create an effective defense to the criminal charges through Blaker's testimony. As a result, these statements are relevant to disprove Balvin's assertions about what happened with A.R. on the night in question.

Because the letters contained only Balvin's own statements and were relevant to a determination of Balvin's guilt, the district court's admission of the letters was not error. And, similarly, Balvin's appellate counsel was not ineffective in failing to raise this issue in Balvin's direct appeal, because counsel's arguments that the letters were inadmissible because they contained hearsay and were not relevant would not have been successful.

In his brief on appeal, Balvin also asserts that his appellate counsel was ineffective in failing to raise on direct appeal the admissibility of Blaker's testimony about the letters. However, Balvin did not raise this issue in his postconviction motion, and as such, this issue is not properly before us. See *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001).

### (d) Testimony Concerning Balvin's Relationship With Fiance

During Blaker's direct examination by the State, the prosecutor asked her about her and Balvin's physical relationship in the weeks and months prior to the night of A.R.'s sexual assault. Blaker testified that during this timeframe, her relationship with Balvin was generally "good," but that she and Balvin had not engaged in sexual relations for about 2 weeks prior to the night of the assault. She also testified that throughout their relationship, she and Balvin did not engage in sexual relations "very often." Balvin's counsel objected to the prosecutor's line of questioning, arguing that it was not relevant. The court overruled the objection and permitted Blaker's testimony.

During defense counsel's cross-examination of Blaker, he attempted to clarify her testimony about her and Balvin's physical relationship. During this cross-examination, Blaker described her "sex life with [Balvin] as normal." She also stated that it was not unusual for them to not engage in sexual relations for a couple of weeks at a time.

In his direct appeal, Balvin did not argue that the district court erred in permitting Blaker to testify about her and Balvin's physical relationship. However, in his postconviction motion and in this appeal, Balvin alleges that his appellate counsel was ineffective in failing to raise this issue in his direct appeal because the testimony should not have been admitted into evidence as it was not relevant. He also asserts that the erroneous admission of the testimony prejudiced his defense. Upon our review, we conclude that Balvin's assertions have no merit.

At trial, the State suggested that Balvin's motive to commit the sexual assault, in part, was his lack of a physical relationship with Blaker. As such, Blaker's testimony about her and Balvin's physical relationship was relevant to demonstrating Balvin's motive. Moreover, we must note that even if Blaker's testimony on this subject was not relevant, it is not at all clear how Balvin was prejudiced by the testimony. When we read Blaker's testimony in its entirety, we understand her testimony to be that she and Balvin had a good relationship and that their physical relationship was fairly normal. Although they had not engaged in sexual relations in the weeks prior to the sexual assault of A.R., this was apparently not unusual for them. Blaker's testimony did not demonstrate anything abnormal about her and Balvin's relationship which would have driven him to commit a sexual assault.

Because Blaker's testimony about her and Balvin's physical relationship was relevant to prove the State's theory about motive and because Balvin cannot show prejudice as a result of the testimony, his appellate counsel was not ineffective in failing to raise the admissibility of such testimony on direct appeal. Any challenge to this testimony would have ultimately been unsuccessful.

## VI. CONCLUSION

We affirm the district court's denial of Balvin's motion for postconviction relief without an evidentiary hearing. Balvin's claims that his trial counsel was ineffective are procedurally barred. And, the files and records affirmatively show that he is entitled to no relief on his claims of ineffective assistance of appellate counsel.

AFFIRMED.