Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/18/2021 08:09 AM CDT

State of Nebraska, appellee and cross-appellant,
v. Ricky Earl Anthony, appellant
and cross-appellee.

___ N.W.2d ___

Filed May 11, 2021.    No. A-20-644.

1.  **Statutes: Appeal and Error.** Statutory interpretation presents a question
    of law, and an appellate court resolves such issues independently of the
    lower court's conclusions.
2.  **Effectiveness of Counsel.** A claim that defense counsel provided inef-
    fective assistance presents a mixed question of law and fact.
3.  **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
    tence imposed within the statutory limits absent an abuse of discretion
    by the trial court.
4.  **Judgments: Words and Phrases.** An abuse of discretion occurs when a
    trial court's decision is based upon reasons that are untenable or unrea-
    sonable or if its action is clearly against justice or conscience, reason,
    and evidence.
5.  **Postconviction: Constitutional Law: Proof.** A trial court must grant
    an evidentiary hearing on a motion for postconviction relief when
    the motion contains factual allegations which, if proved, constitute
    an infringement of the movant's rights under the Nebraska or federal
    Constitution. If a court grants such an evidentiary hearing, it is obligated
    to determine the issues and make findings of fact and conclusions of law
    with respect thereto.
6.  **Effectiveness of Counsel: Records: Appeal and Error.** The fact that
    an ineffective assistance of counsel claim is raised on direct appeal does
    not necessarily mean that it can be resolved. The determining factor is
    whether the record is sufficient to adequately review the question.
7.  **Effectiveness of Counsel: Appeal and Error.** If the record is sufficient
    to address the ineffective assistance of counsel claim, an appellate court
    reviews the factual findings of the lower court for clear error.
8.  ____: ____. With regard to the questions of counsel's performance or
    prejudice to the defendant as part of the two-pronged test articulated

in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

9. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

10. **Homicide: Motor Vehicles: Proof: Habitual Criminals: Sentences.** Because the State must prove an additional element in order to convict a defendant of felony motor vehicle homicide, rather than misdemeanor motor vehicle homicide, there is no impermissible double enhancement when a person is convicted of felony motor vehicle homicide and is determined to be a habitual criminal.

11. **Effectiveness of Counsel.** Trial counsel does not provide ineffective assistance in failing to raise an unsuccessful argument.

12. **Sentences.** When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

13. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Otoe County: JULIE D. SMITH, Judge. Affirmed.

Julie E. Bear, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Following Ricky Earl Anthony's motion for postconviction relief, the district court for Otoe County granted his motion

in the form of a new direct appeal. Pursuant to that order, Anthony has filed this direct appeal of his plea-based convictions of two counts of motor vehicle homicide. On appeal, Anthony challenges the district court's finding that he is a habitual criminal. He also asserts that the district court erred in imposing excessive sentences and that he received ineffective assistance of trial counsel. We affirm Anthony's convictions and sentences.

## II. BACKGROUND

On December 10, 2018, an information was filed in the district court, charging Anthony with five offenses: two counts of motor vehicle homicide, in violation of Neb. Rev. Stat. § 28-306 (Reissue 2016), a Class IIIA felony; one count of leaving the scene of an injury accident causing serious bodily injury or death, in violation of Neb. Rev. Stat. § 60-698 (Cum. Supp. 2020), a Class III felony; one count of willful reckless driving, second offense, in violation of Neb. Rev. Stat. § 60-6,214 (Reissue 2010), a Class II misdemeanor; and one count of driving under revocation, third offense, in violation of Neb. Rev. Stat. § 60-4,108(1) (Cum. Supp. 2020), a Class II misdemeanor. The information also alleged that Anthony was a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016).

Subsequently, both Anthony and the State appeared before the district court and indicated that they had reached a plea agreement. The plea agreement required Anthony to plead guilty or no contest to an amended information which charged him with only two counts of motor vehicle homicide. In exchange for Anthony's pleas, the State agreed to dismiss the other charges contained in the original information. In addition, the State agreed to jointly recommend a concurrent sentence for the two counts of motor vehicle homicide. The amended information included an allegation that Anthony was a habitual criminal. The parties informed the court that because Anthony was not stipulating to his status as a habitual

criminal as a part of the plea agreement, a hearing would have to be held wherein the State would have to prove that he was a habitual criminal.

Upon the district court's inquiry, Anthony indicated that the plea agreement described to the court reflected the entirety of the agreement between him and the State. He stated that no one had threatened him or promised him anything other than what was contained in the plea agreement to compel him to change his previously entered not guilty pleas. Anthony also affirmed that he understood the charges contained in the amended information and the possible penalties associated with those charges. He indicated an understanding that the court was not bound by the joint sentencing recommendation made by the State and his counsel. Anthony affirmed that he understood the constitutional rights he was waiving by entering a guilty or no contest plea. He stated that he had told his attorney everything he knew about the case and about any possible defenses he might have. He declined an opportunity to speak further with his counsel.

Anthony indicated his intention to change his not guilty pleas to pleas of no contest. The State then provided a factual basis to support Anthony's no contest pleas. According to that factual basis, during the evening hours of October 21, 2018, law enforcement officers were dispatched to a two-vehicle accident in rural Otoe County, Nebraska. Upon arrival, law enforcement officers observed a gray sport utility vehicle (SUV) and a red pickup truck, both of which appeared to have been involved in the accident. There was no one inside of the gray SUV, but one of the doors was open and there was loud music still playing from it. There were two passengers located inside of the red pickup truck, which had rolled onto its top. The front seat passenger was pronounced dead at the scene. The back seat passenger was transported to a hospital and pronounced dead a short time later. The driver of the red pickup truck sustained serious injuries and was also transported to the hospital, where he was treated and eventually released.

Witnesses to the accident reported that the gray SUV had been traveling northbound on the two-lane highway when the driver had suddenly veered into the southbound lane in front of the red pickup truck. The red pickup truck apparently attempted to avoid colliding with the gray SUV, but the evasive attempt was unsuccessful and the vehicles collided head on. A subsequent accident reconstruction investigation revealed that the northbound gray SUV was traveling partially on the southbound shoulder of the highway just prior to the accident. The red pickup truck attempted to move to the left to avoid the accident, just as the gray SUV attempted to return to the northbound lane. The vehicles collided "nearly in the middle of the roadway."

Law enforcement officers were unable to locate the driver of the gray SUV at the accident scene. Officers searched a cornfield which was adjacent to the highway and employed a helicopter in an attempt to find the driver. Officers then utilized the name listed upon the registration of the gray SUV to identify its owner. From that investigation, officers learned that Anthony had been driving the gray SUV at the time of the accident. Anthony was located a little while later at a motel in Falls City, Nebraska. He attempted to hide from law enforcement officers, but was ultimately arrested and confessed to being the driver of the gray SUV.

The district court found that Anthony understood the nature of the charges against him and the possible penalties; that his no contest pleas were made freely, voluntarily, knowingly, and intelligently; and that the factual basis supported his pleas. The court then accepted Anthony's no contest pleas to two counts of motor vehicle homicide. The court ordered that a presentence report be completed.

The presentence report revealed that Anthony was 55 years old and obtained his diploma through the GED program during a previous period of incarceration. At the time of his arrest for the current offense, he was briefly employed at a motel. Before that, he was employed as a seasonal construction worker.

Anthony has a lengthy criminal history, which includes numerous traffic-related offenses. His history includes convictions for second degree forgery, theft by receiving stolen property, shoplifting, theft by unlawful taking (3 times), driving during a period of suspension (13 times), driving during a period of revocation, driving under the influence (3 times), leaving the scene of an accident, possession of drug paraphernalia (3 times), reckless driving (2 times), no proof of insurance (2 times), carrying a concealed weapon, trespassing, failure to appear (2 times), and damage to property. As a result of his convictions, Anthony has been sentenced to prison on two occasions, to jail on numerous occasions, and to a period of probation on three occasions. His probation was revoked two out of his three probationary periods.

In addition to his prior convictions, 3 months prior to the current offense, Anthony was charged with driving under the influence (second offense), possession of an open alcohol container, and failure to appear. The disposition of these offenses is not clear from our record.

During his interview for the presentence report, Anthony initially denied responsibility for the accident which gave rise to his current charges. He stated, "'I didn't cause the accident in my opinion. It wouldn't have happened if [the driver of the red pickup truck] would have stayed in his lane.'" Anthony denied that he was under the influence of either drugs or alcohol at the time of the accident. Later during the interview, Anthony stated, "'I feel I'm at fault because I chose to pass the vehicle. I am so sorry for them losing their loved ones.'"

Testing conducted by the probation office as a part of the presentence report revealed that Anthony posed a "high risk" of reoffense.

Immediately prior to the sentencing hearing, the district court conducted a hearing to consider the State's charge that Anthony was a habitual criminal. Based on evidence presented by the State, the court found that Anthony had two prior convictions, each of which involved a sentence of not less than

1 year: a conviction in 1992 for theft by receiving stolen property, for which he was sentenced to 1 year's imprisonment, and a conviction in 1995 for theft, for which he was sentenced to 3 to 5 years' imprisonment. The court further found that Anthony was represented by counsel in each prior conviction. The court found that Anthony was a habitual criminal. The court thereafter sentenced Anthony to 20 to 40 years' imprisonment on each conviction, to be served concurrently. As a part of the sentence, Anthony was required to serve a mandatory minimum of 10 years in prison.

Anthony, acting pro se, filed a notice of appeal from his convictions and sentences. However, the notice of appeal in case No. A-19-1160 was filed more than 30 days after entry of the district court's sentencing order and was, as a result, summarily dismissed on December 27, 2019, by this court as having been untimely filed.

Anthony then filed a verified motion to vacate and set aside his convictions, alleging, among other things, that his trial counsel failed to file a direct appeal from his convictions and sentences despite Anthony's explicit request for him to do so. Anthony requested he be permitted to file a "'new direct appeal'" from his convictions and sentences.

On August 31, 2020, a hearing was held on Anthony's motion. At the start of the hearing, Anthony's new counsel indicated her belief that the hearing was merely to determine whether Anthony was entitled to an evidentiary hearing on the allegations raised in his motion. However, the district court explained that it was ready to go forward and determine whether Anthony was entitled to a new direct appeal based on the allegations made in Anthony's motion. The court stated, "So I guess my thought was that you would mark his verified motion and offer it, and then I would just rule on whether he gets a new direct appeal." After the motion was marked as an exhibit and received by the court, the court inquired of counsel whether she wished to offer any additional evidence. Anthony's counsel responded that she had no further evidence.

The county attorney responded "I do not have any, Your Honor." The court then explained:

> I agree; . . . Anthony really did do a pretty good job both on the motion and the brief. I reviewed the case law that he supplied and I do believe that he is entitled to a direct appeal. He received a fairly lengthy sentence, and I think it would be kind of a shame if he didn't have the opportunity to appeal that sentence.
>
> And so the Court is going to make a finding that . . . Anthony's trial counsel was ineffective in that he failed to withdraw and he failed to file an appeal on behalf of his client after his client was sentenced to a lengthy prison term, and so I am going to grant . . . Anthony's requested relief and grant him a new direct appeal.

Anthony promptly filed a new notice of appeal from his convictions and sentences.

### III. ASSIGNMENTS OF ERROR

Anthony asserts that the district court erred in determining that he was a habitual criminal and in imposing excessive sentences. Anthony also asserts that he received ineffective assistance of counsel because trial counsel failed to hire or consult with an accident reconstructionist and failed to "zealously contest" the habitual criminal enhancement.

On cross-appeal, the State asserts that the district court erred in granting Anthony postconviction relief without first conducting an evidentiary hearing and making findings of fact and conclusions of law.

### IV. STANDARD OF REVIEW

[1] The procedural issues presented by the State's cross-appeal arise under the Nebraska Postconviction Act. Neb. Rev. Stat. §§ 29-3001 to 29-3005 (Reissue 2016 & Cum. Supp. 2018). Statutory interpretation presents a question of law, and an appellate court resolves such issues independently of the lower court's conclusions. *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008).

[2] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

[3,4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

## V. ANALYSIS

### 1. State's Cross-Appeal

We first address the issue raised in the State's cross-appeal. Essentially, the State argues that the district court erred in granting Anthony postconviction relief in the form of a new direct appeal without having first held an evidentiary hearing to determine whether Anthony could prove the allegations contained in his motion. Ultimately, we conclude that the district court did hold an evidentiary hearing, albeit cursory, and that, as such, the court did not err in granting Anthony postconviction relief without conducting such a hearing.

[5] Under the Nebraska Postconviction Act:

Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, and determine the issues and make findings of fact and conclusions of law with respect thereto.

§ 29-3001(2). In *State v. Jim, supra*, the Nebraska Supreme Court interpreted this statutory language to require a court to grant an evidentiary hearing on a motion for postconviction

relief when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. The court held that if a lower court grants such an evidentiary hearing, it is obligated to determine the issues and make findings of fact and conclusions of law with respect thereto. *Id*.

In *State v. Jim, supra*, the district court granted the prisoner's motion for postconviction relief in the form of a new direct appeal without holding any hearing on the motion. Instead, 6 months after the motion was filed, the court entered an order finding, solely on the basis of its review of the motion for postconviction relief, that said motion should be granted. On appeal, the Supreme Court reversed the decision of the district court and remanded the cause for further proceedings. *Id*. The court held that the district court "erred in the exercise of its jurisdiction by granting postconviction relief without conducting an evidentiary hearing and making findings of fact and conclusions of law." *Id.* at 488, 747 N.W.2d at 416.

Similarly, in *State v. Epting*, 276 Neb. 37, 751 N.W.2d 166 (2008), the Supreme Court reversed the order of the district court granting the prisoner postconviction relief in the form of a new direct appeal and remanded the cause, because the court did not first conduct an evidentiary hearing on the allegations raised in the motion.

In *State v. Murphy*, 15 Neb. App. 398, 727 N.W.2d 730 (2007), this court addressed a related procedural issue. In that case, the defendant did not file a timely appeal following her conviction. In a subsequent postconviction proceeding, she and the State stipulated that she should be permitted to file an appeal, and the district court entered an order granting the stipulation and permitting the appeal to be filed. The record on appeal included the stipulation and order but did not include the motion for postconviction relief. The only record before the Nebraska Court of Appeals was a stipulation that provided no facts pertaining to any claimed deprivation of constitutional rights, but, rather, "only the bare conclusory agreement that 'an Appeal' be allowed," and the order of the district court

implementing the stipulation. *Id*. at 404, 727 N.W.2d at 735. Noting that parties cannot stipulate to matters of law, the Court of Appeals held that "the stipulation was not sufficient to invoke the district court's jurisdiction pursuant to the post-conviction statute and constituted an invalid attempt to extend the time for appeal." *Id*. We concluded that we therefore lacked appellate jurisdiction, and we dismissed the purported new direct appeal.

In this case, the district court held a hearing on Anthony's motion for postconviction relief, and that motion is included in our record. Apparently, counsel for Anthony believed that the hearing was "just to determine whether or not [Anthony is] entitled to [an evidentiary] hearing on his post-conviction [motion]." It is possible that the prosecutor may have had a similar impression, but the record is not clear on this issue.

Contrary to the belief of counsel, the district court indicated its intention to immediately proceed to an evidentiary hearing. At the hearing, the district court directed that a copy of Anthony's verified motion for postconviction relief be marked and then received it into evidence. The court inquired of both defense counsel and the prosecutor regarding whether any additional evidence would be presented at the hearing. Notably, not only did the State indicate that it had no additional evidence to offer, the State did not object to the district court's holding an evidentiary hearing at that time and did not ask for a continuance to obtain further evidence.

We have carefully reviewed the record from the hearing held on Anthony's motion for postconviction relief. Based upon this careful review, we find that the district court did hold an evidentiary hearing on the motion. The court received the verified motion as an exhibit and inquired of the parties whether any other evidence would be offered. The parties declined the opportunity to present further evidence, and as a result, the district court based its decision to grant Anthony postconviction relief on the recitations contained in his verified motion, the sole piece of evidence before it.

The question that we must resolve is whether the cursory procedure followed by the district court runs afoul of the holdings of *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008); *State v. Epting*, 276 Neb. 37, 751 N.W.2d 166 (2008); and *State v. Murphy*, 15 Neb. App. 398, 727 N.W.2d 730 (2007)*.* While we believe that a strong argument can be made that the procedure followed by the district court runs contrary to the holdings of these cases, there are distinguishing factors present. Most significantly, here, an evidentiary hearing was held. The court did direct that a copy of the verified motion be marked and then received it into evidence. The court then afforded counsel for Anthony and the State the opportunity to present additional evidence. Neither chose to do so. In addition, the State made no motion for a continuance so as to allow it time to gather evidence which may rebut Anthony's allegations. Therefore, we cannot agree with the State's contention on appeal that the court failed to conduct an evidentiary hearing. While we recognize that the court may have surprised counsel for the parties with its decision to immediately hold an evidentiary hearing, the State had the ability to either present evidence, object to the court's procedure, or ask for a continuance. The State declined to utilize any of these options.

We recognize that the more typical procedure under these circumstances would involve the district court's first making an explicit determination regarding whether an evidentiary hearing is necessary based upon the allegations contained in the motion for postconviction relief. The district court could then notify the parties of its determination and schedule an evidentiary hearing at some point in the future. See, e.g., *State v. Combs*, 308 Neb. 587, 955 N.W.2d 322 (2021); *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). This procedure would provide the parties with notice and an opportunity to obtain more detailed relevant evidence relating to any interactions that may have occurred between Anthony and trial counsel following sentencing. The summary procedure employed by the district court in this case appeared to result in confusion.

Here, when the district court failed to announce its determination that an evidentiary hearing was warranted in advance of holding an evidentiary hearing, defense counsel and the State received no notice that they should be prepared to offer evidence in support of or in opposition to Anthony's motion for postconviction relief. However, in this case, because an evidentiary hearing did occur and because the State did not object to the court's summary procedure or ask for a continuance to obtain further evidence, we cannot say that the district court erred by granting Anthony a new appeal.

## 2. Ineffective Assistance of Counsel

We next address Anthony's claims of ineffective assistance of trial counsel. On appeal, Anthony alleges that he received ineffective assistance of trial counsel in two respects. First, he argues that his trial counsel failed to hire or consult with an accident reconstructionist regarding the circumstances surrounding the accident. Second, he argues that his trial counsel failed to "zealously contest the Habitual Criminal enhancement by raising the issue involving the double enhancement." Before we address Anthony's specific allegations of ineffective assistance of trial counsel, we recount the law which overlays our analysis of these claims.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*.

[6] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). This is because the trial record reviewed on appeal is generally "'devoted to issues of guilt or innocence'" and does not usually address issues of counsel's performance. *Id*. at

769, 848 N.W.2d at 578. The determining factor is whether the record is sufficient to adequately review the question. *State v. Filholm, supra.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Chairez, supra*.

[7-9] If the record is sufficient to address the ineffective assistance of counsel claim, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

(a) Failure to Hire or Consult
Accident Reconstructionist

Anthony asserts that his trial counsel provided ineffective assistance in failing to hire or consult with an independent accident reconstructionist regarding the circumstances surrounding the accident. Specifically, he alleges that such an expert could have shed light on a defect in the gray SUV he was driving at the time of the accident which caused it to "jerk violently when [the driver] depress[es] or release[s] the accelerator." He also alleges that such an expert could have determined whether the accident occurred after Anthony had returned to his proper lane of travel.

We determine that our record is insufficient to review this claim of ineffective assistance of trial counsel. Our record does not reveal whether trial counsel consulted with an accident reconstructionist, or with any other expert, prior to Anthony's entering his pleas of no contest. Our record also does not reveal when, or whether, Anthony informed his counsel of any possible defect in the gray SUV he was driving at the time of the accident.

(b) Failure to Challenge Habitual
Criminal Enhancement

Anthony also asserts that his trial counsel provided ineffective assistance in failing to adequately defend against the habitual criminal enhancement. Specifically, Anthony argues that trial counsel should have argued that a habitual criminal enhancement was not appropriate given that his offense was already "enhanced" pursuant to the language of § 28-306. We conclude that the record is sufficient to address this claim. We further conclude that Anthony cannot demonstrate he was prejudiced in any way by counsel's failure to raise this argument during the enhancement hearing.

Subject to exceptions not applicable to this case, the habitual criminal statute provides:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years[.]

§ 29-2221(1). In a habitual criminal proceeding, the State's evidence must establish with requisite trustworthiness, based upon a preponderance of the evidence, that (1) the defendant has been twice convicted of a crime, for which he or she was sentenced and committed to prison for not less than 1 year;

(2) the trial court rendered a judgment of conviction for each crime; and (3) at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings. *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012). Here, the district court concluded that there were two valid and usable convictions for purposes of the habitual criminal enhancement. Anthony does not challenge this conclusion, which is fully supported by the record. Instead, Anthony argues that using his felony motor vehicle homicide convictions to trigger a habitual criminal enhancement would result in an improper double enhancement.

Motor vehicle homicide is criminalized under § 28-306, which provides, in relevant part:

(1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.

(2) Except as provided in subsection (3) of this section, motor vehicle homicide is a Class I misdemeanor.

(3)(a) If the proximate cause of the death of another is the operation of a motor vehicle in violation of section 60-6,213 or 60-6,214, motor vehicle homicide is a Class IIIA felony.

As charged by the State, Anthony pled no contest to two Class IIIA felonies under § 28-306(3)(a), based on his willful reckless operation of his vehicle at the time of the accident which resulted in two deaths pursuant to § 60-6,214. Anthony argues that he was improperly sentenced as a habitual criminal because the "enhancement" from a misdemeanor to a felony under § 28-306(3)(a) results in an impermissible double enhancement.

Anthony's argument is definitively refuted by the Supreme Court's holding in *State v. Kinser, supra*. In that case, the court concluded that the defendant's conviction for felony flight to

avoid arrest coupled with his status as a habitual criminal did not constitute an impermissible double enhancement. The court explained that a reading of the flight to avoid arrest statute, see Neb. Rev. Stat. § 28-905 (Reissue 2016), clearly indicates that "the offense of flight to avoid arrest is a misdemeanor if it involves fleeing in a motor vehicle in an effort to avoid arrest, whereas the offense becomes a felony . . . if the State alleges and proves the additional element of willful reckless operation of a motor vehicle." *State v. Kinser*, 283 Neb. at 568, 811 N.W.2d at 233. Because the State was required to prove an additional element in order to convict the defendant of felony flight to avoid arrest, there was no "enhancement" to the defendant's sentence. Accordingly, there was no double enhancement when the defendant was sentenced as a habitual criminal.

[10] We find that the Supreme Court's holding in *Kinser* is directly applicable to this case. Anthony's convictions for motor vehicle homicide were enhanced to felonies by virtue of the State's allegation of the additional element that Anthony was operating the vehicle in a willful and reckless manner. Because the State was required to prove an additional element in order to convict Anthony of felony motor vehicle homicide, there was no "enhancement" to his sentence. As such, Anthony was not subjected to an impermissible double enhancement when he was sentenced as a habitual criminal.

[11] Because the district court properly found Anthony to be a habitual criminal and sentenced him accordingly, Anthony cannot demonstrate that he was prejudiced by his counsel's failure to raise the issue of "double enhancement" before the district court. Counsel did not provide ineffective assistance by failing to raise an unsuccessful argument.

For completeness, we note that in Anthony's brief to this court, he acknowledges the Supreme Court's holding in *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012). However, he encourages this court to "reexamine" the holding in *Kinser*. Brief for appellant at 12. We decline Anthony's invitation

to reexamine *Kinser.* It is not in this court's purview to reexamine explicit precedent established by the Supreme Court.

### 3. Sentencing

Anthony argues on appeal that the district court imposed excessive sentences. He argues, inter alia, that he should not have been sentenced as a habitual criminal, because such an enhancement to his sentences resulted in an impermissible double enhancement. We conclude that Anthony was properly classified as a habitual criminal and that the court did not otherwise abuse its discretion in sentencing him.

### (a) Habitual Criminal Enhancement

Anthony argues that the district court erred in enhancing his sentences based on his status as a habitual criminal because, when coupled with the enhancement of his convictions for motor vehicle homicide to felonies based upon the language of § 28-306, he was subjected to an impermissible double enhancement. We addressed Anthony's assertions in this regard above, in connection with his assertion of ineffective assistance of trial counsel. As such, we do not revisit the issue here. However, we do note that Anthony failed to raise this issue before the district court. As such, he is barred from now asserting any such error by the district court. See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012) (when issue is raised for first time in appellate court, it will be disregarded inasmuch as lower court cannot commit error in resolving issue never presented and submitted to it for disposition).

### (b) Excessiveness in General

Having determined that the district court did not err when it found Anthony to be a habitual criminal, we consider his argument that his sentences were excessive. We first note that, as charged by the State, motor vehicle homicide is a Class IIIA felony pursuant to § 28-306(3)(a). The sentencing range for a Class IIIA felony is up to 3 years' imprisonment in addition to a term of postrelease supervision. Neb. Rev. Stat. § 28-105

(Cum. Supp. 2018). However, because Anthony was found to be a habitual criminal, § 29-2221(1) sets the sentencing ranges for Anthony's convictions as imprisonment for a mandatory minimum of 10 years and a maximum of 60 years. Therefore, Anthony's sentence of imprisonment for 20 to 40 years for each motor vehicle homicide conviction was within statutory limits.

[12,13] Because the sentences were within statutory limits, we review the sentences imposed for an abuse of discretion. See *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016). When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Anthony contends that the district court imposed excessive sentences because the court failed to consider such mitigating factors as his "tumultuous" past, brief for appellant at 14, including suffering abuse at the hands of his father as a child and then later in life, having his pregnant fiance murdered. He also cites his mental health struggles and lack of intent to harm anyone at the time of the collision. Anthony also reminds this court that his habitual criminal status was based upon felony offenses which occurred more than 20 years prior to the current offense.

Based upon our review of the record, it is clear that the district court was aware of and considered all of the relevant factors in imposing Anthony's sentences. Prior to imposing the

sentences, the court explicitly indicated, "I have thoroughly reviewed the presentence investigation and the victim impact statements and [Anthony's] statements." The court then went on to give a lengthy statement explaining its sentencing decision. As a part of this statement, the court discussed its consideration of

> [Anthony's] age and . . . what that means as far as a sentence that you would serve with the Nebraska Department of Correctional Services. I've done a number of different calculations in determining what the court sentence is going to be. I have considered your education and experience, your social and cultural background, your past criminal record, the nature of the offense, and I've also considered the fact that you qualify as a habitual criminal and that two people lost their lives during the motor vehicle accident.

The district court discussed at length Anthony's criminal history, with particular attention paid to his numerous traffic-related convictions.

Upon our review, we cannot find that the district court abused its discretion in sentencing Anthony to concurrent terms of 20 to 40 years' imprisonment for his motor vehicle homicide convictions. There is nothing in the record to suggest that the district court failed to consider the relevant statutory factors. Instead, the record reflects that the court carefully considered all of the information contained in the presentence report and presented at the sentencing hearing and ultimately decided that, given Anthony's criminal history, his status as a habitual criminal, and the serious nature of his offenses, that lengthy prison sentences were warranted. We also note that despite the length of time that has passed since the prior felony convictions which were the basis of the district court's finding that Anthony was a habitual criminal, these prior convictions support the district court's determination, and as we have stated above, the district court properly found Anthony to be a habitual criminal. Moreover, the presentence report

displays that between his most recent prison sentence imposed in 1995 and the date he was sentenced in this case, Anthony has been sentenced in 33 separate cases, some involving multiple convictions. Though none of these sentences were for felony offenses, his conduct over the years has demonstrated a continual disregard for the law. The sentences in this case are within statutory limits and are supported by the serious nature of the offenses.

## VI. CONCLUSION

We affirm Anthony's convictions and sentences. The district court properly found Anthony to be a habitual criminal based upon his two prior felony convictions. The court did not otherwise impose excessive sentences. As to Anthony's claims of ineffective assistance of trial counsel, we find that the record on appeal is insufficient to address his claim regarding counsel's failure to hire an independent accident reconstructionist. We find his claim regarding counsel's failure to adequately defend his habitual criminal status to be without merit.

AFFIRMED.