IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ESCAMILLA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ALVARO A. ESCAMILLA, SR., APPELLANT.

Filed June 3, 2025.    No. A-25-004.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Allyson A. Mendoza for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

MOORE, PIRTLE, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Alvaro A. Escamilla, Sr., appeals from his plea-based conviction in the district court for Douglas County of manslaughter, for which he was sentenced to a term of 15 to 20 years' imprisonment. Escamilla claims on appeal that he was denied the effective assistance of trial counsel and that the district court abused its discretion by imposing an excessive sentence. We affirm.

## II. STATEMENT OF FACTS

On March 13, 2024, Escamilla was charged by information with manslaughter, a Class IIA felony; use of a deadly weapon (non-firearm) to commit a felony, a Class II felony; possession of a deadly weapon (non-firearm) by a prohibited person, a Class III felony; and possession of methamphetamine, a Class IV felony.

At a plea hearing held on September 26, 2024, the district court stated its understanding that Escamilla would be withdrawing his previously entered pleas of not guilty and entering a plea of no contest to one count of manslaughter, in exchange for the State's dismissal of all other counts. Escamilla affirmed and pled no contest.

The district court thoroughly advised Escamilla of his various constitutional rights, and Escamilla affirmatively indicated that he understood his rights and that he was freely and voluntarily waiving his rights. The court explained to Escamilla the charge and possible penalties associated with a Class IIA felony, which Escamilla indicated he understood.

The district court asked Escamilla if he had received any promises, threats, or inducements regarding his no contest plea, which Escamilla denied. Escamilla also affirmed that he had enough time to discuss his case, the evidence, and any defenses with his attorney, and that he believed his attorney had properly represented him.

The State provided the following factual basis:

[On] February 1st, 2024, law enforcement with the Omaha Police Department was dispatched to [an Omaha residence]. When officers arrived, they located the victim, Stephen Tangeman, suffering from apparent cutting. The victim was transported to UNMC where he later died from his injuries. The Homicide Unit conducted an investigation, and located three witnesses who were present during the cutting.

Through the witnesses, officers were able to determine that the defendant, as well as a friend, had arrived at . . . Tangeman's house, because Mr. Tangeman's roommates' keys were missing. And they had believed that Steven Tangeman had stolen the keys. The defendant went into the victim's room, and searched the victim's room for the keys. The victim and the defendant then proceeded to come upstairs where an altercation did ensue.

During that altercation, the victim who was sitting down, had gotten up after the defendant was yelling at him. The victim did proceed to hit, or scratch, the defendant, and the defendant eventually produced a weapon and hit the victim back, cutting the victim . . . which nicked an artery which caused the injuries. Officers were able to locate the defendant, and place him into custody. A search of the defendant's vehicle did turn up with some controlled substances, as well as the knife, which had the victim's blood on it. There was also apparent blood from the victim, on the defendant's clothes. All these events occurred in Douglas County, Nebraska.

The district court found beyond a reasonable doubt that Escamilla fully understood his rights and freely and voluntarily waived them; that he was acting voluntarily; that he fully understood the charge against him and the consequences of his plea; that his plea was made freely, voluntarily, knowingly, and intelligently; and that there was a sufficient factual basis for the court to accept the plea. The State moved to dismiss the remaining counts in the information, which the court granted.

A sentencing hearing was held on December 5, 2024. The district court noted that it had reviewed the completed presentence investigation report (PSR), and it heard remarks from counsel and Escamilla. The court sentenced Escamilla to a term of 15 to 20 years' imprisonment with 309 days' credit for time served.

Escamilla appeals.

## III. ASSIGNMENTS OF ERROR

Escamilla assigns that his trial counsel was ineffective in (1) failing to review vital discovery evidence with Escamilla; (2) failing to properly advise Escamilla regarding self-defense law; (3) impermissibly promising him a sentence of no more than 10 years' imprisonment; and (4) failing to properly advise Escamilla regarding his participation in his PSR interview. Escamilla also assigns that the cumulative effect of the above assigned errors denied Escamilla the effective assistance of trial counsel, and that the district court abused its discretion by imposing an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. Ineffective Assistance of Counsel

Through different counsel, Escamilla contends that his trial counsel provided ineffective assistance in five ways. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. See *State v. Clark, supra*. However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. See *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant

would have insisted on going to trial rather than pleading guilty. See *State v. Anthony*, 29 Neb. App. 839, 961 N.W.2d 545 (2021). A reasonable probability is a probability sufficient to undermine confidence in the outcome. See *State v. Clark, supra*.

### (a) Failure to Review Discovery With Escamilla

Escamilla first argues that his trial counsel was ineffective for failing to review vital discovery evidence with him prior to his decision to plead no contest. Escamilla asserts that he repeatedly requested that trial counsel provide him with police reports, witnesses statements, and depositions, but that trial counsel refused to provide and sufficiently review the discovery evidence with him. He contends that due to this failure, Escamilla was unable to make an informed decision regarding the resolution of his case.

The record on appeal is insufficient to address this claim. We acknowledge that Escamilla was present at the plea hearing and heard the allegations against him when the State recited the factual basis for his plea. He further told the district court that he had enough time to discuss his case, the evidence, and any defenses he may have with his attorney, and he was satisfied with the job his attorney had done. Nevertheless, Escamilla's claim that counsel failed to review the specified discovery materials with him is not specifically refuted by the record and is thus preserved for postconviction review. See *State v. Woodruff*, 30 Neb. App. 193, 965 N.W.2d 836 (2021) (record on direct appeal insufficient to address claim that trial counsel failed to share and review discovery with defendant).

### (b) Failure Regarding Self-Defense Advisement

Escamilla next argues that his trial counsel was ineffective for misadvising Escamilla on the law of self-defense in Nebraska. Escamilla contends that the record demonstrated Escamilla had a "viable self-defense claim," and that due to trial counsel's failure to correctly advise Escamilla on self-defense law, Escamilla was unable to make an informed decision regarding the resolution of his case. Brief for appellant at 11.

Self-defense is a statutorily defined affirmative defense in Nebraska. See Neb. Rev. Stat. § 28-1409 (Reissue 2016). To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. *State v. Bedford*, 31 Neb. App. 339, 980 N.W.2d 451 (2022). The force used in defense must be justified under the circumstances. *Id*.

The factual basis established that Escamilla and Tangeman got into an altercation. Tangeman, who had been sitting down, rose to his feet when Escamilla began yelling at him. Tangeman then proceeded to hit or scratch Escamilla. At sentencing, trial counsel noted that photographic evidence of Escamilla demonstrated that he had a number of facial injuries. Escamilla then produced a weapon and hit Tangeman back, cutting Tangeman, which "nicked an artery" causing Tangeman's fatal injury. Escamilla assigns no error regarding the accuracy of the factual basis.

There is no showing here that Escamilla had a reasonable and good faith belief that he needed to protect himself against death or serious bodily harm when he cut Tangeman, or that the production of a deadly weapon was justified under the circumstances. Defense counsel is not

ineffective for failing to raise an argument that has no merit. *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023). Escamilla has failed to show that his trial counsel was deficient in this regard.

### (c) Failure Regarding Imprisonment Advisement

Escamilla argues that his trial counsel was ineffective for advising Escamilla that he would receive no more than 10 years' imprisonment if he pled no contest to the sole count of manslaughter.

This claim is affirmatively refuted by the record. At the plea hearing, the district court asked Escamilla if anyone had made any promises to encourage him to plead no contest; if anyone had told him, or lead him to believe, that he would receive probation, be given a lighter sentence, or in any way rewarded for pleading no contest; or if he had received any threats, inducements, or assurances of leniency, by anyone regarding his no contest plea. Escamilla answered no to all of these questions by the court. Escamilla has failed to show that his trial counsel was deficient in this regard. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013).

### (d) Failure Regarding PSR Advisement

Escamilla argues that his trial counsel was ineffective for advising Escamilla not to make any statement during his PSR interview. Escamilla alleges that he was unable to share that his sole purpose for going to Tangeman's residence that evening was to search for missing keys, not to commit an assault on him. He also alleges that he was unable to share his belief that he needed to defend himself when Tangeman began to physically assault him.

The factual basis provided by the State established that Escamilla went to Tangeman's residence to search for missing keys. The factual basis also established that Tangeman was the initial aggressor, before Escamilla "eventually produced a weapon and hit the victim back, cutting the victim[.]" Further, trial counsel at the sentencing hearing noted Escamilla's facial injuries and that "the death itself, was not intended to occur." The district court agreed, stating "I don't think you sought out to go to this person and attack him, and stab him multiple times, and kill him."

The record establishes that the district court had the information Escamilla argues he was unable to share in a PSR interview. Escamilla has failed to show that his trial counsel was deficient in this regard.

### (e) Effect of Cumulative Failures

Finally, Escamilla argues that if any of the ineffective assistance of counsel claims argued above did not by itself rise to the level of a constitutional violation, the cumulative effect of all the errors demonstrates trial counsel's overall performance was so deficient that it denied Escamilla the effective assistance of counsel. We have found that three of Escamilla's claims of ineffective of trial counsel fail and the record on direct appeal is insufficient to review the remaining claim. Thus, we find that no cumulative effect occurred.

### 2. EXCESSIVE SENTENCE

Escamilla also claims that the district court abused its discretion when it imposed an excessive sentence.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering

and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. See *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Escamilla was convicted of manslaughter, a Class IIA felony. A Class IIA felony is punishable by a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Escamilla' sentence of 15 to 20 years' imprisonment is within the statutory limit.

Escamilla nevertheless claims that the district court abused its discretion, arguing that the court failed to adequately consider Escamilla's cultural and familial background, educational history, criminal record, and expressed remorse.

The PSR shows that Escamilla was 49 years old at the time the report was prepared and was married (though separated) with five biological children, one stepchild, and seven grandchildren. Escamilla had obtained his GED in 1994 and had previously been employed as a foreman at a painting business. Escamilla reported that he had participated in various programs while he was incarcerated and awaiting sentencing. Letters of support by Escamilla's family members and children were included in the PSR and detailed the ways in which Escamilla had been an involved and attentive parent.

Escamilla's criminal history involves several felony convictions, including robbery in 1992, for which he was sentenced to 36 months of intensive supervised probation (which was later terminated unsatisfactorily); receiving a stolen item in 1996, for which he was sentenced to 3 to 5 years in prison; possession of a deadly weapon (firearm) by a prohibited person in 1996, for which he was sentenced to 3 to 5 years in prison; discharge of a firearm at a building or vehicle in 1998, for which he was sentenced to 10 to 12 years in prison; possession of a deadly weapon (firearm) by a prohibited person in 1998, for which he was sentenced to 5 to 6 years in prison; and assault on an officer in 2002, for which he was sentenced to 1 year in prison. Escamilla has also been convicted of assault causing bodily injury, assault and battery, and domestic abuse assault in the third degree.

Escamilla has twice been convicted of driving under the influence (in 1993 and 1994, respectively) and he reported being a daily marijuana user since he was a teenager. His criminal history includes convictions related to the possession of marijuana and drug paraphernalia in 1996. Escamilla also reported that he had resumed using methamphetamine several months before the incident at issue. On the Level of Service/Case Management Inventory, Escamilla scored in the overall very high risk to reoffend category.

At the sentencing hearing, the district court indicated that it had reviewed the statutory factors as well as the PSR, which contained the mitigating factors argued by Escamilla. The court stated that it had read the letters of support by Escamilla's family and the court noted that "[Escamilla's] family's losing as well, but fact remains, you took someone's life. I can't give a

minimum sentence on something like that." The court further found that a sentence of probation was not appropriate in this case.

The district court considered the appropriate sentencing factors in imposing sentence. We find no abuse of discretion by the district court in the sentence imposed.

## VI. CONCLUSION

We find that the record is insufficient to review Escamilla's allegation that his trial counsel was ineffective in failing to review discovery with him prior to entering his plea, however, the record is sufficient to review, and reject, his remaining allegations of ineffective assistance of trial counsel. The sentence imposed was not excessive. We affirm Escamilla's conviction and sentence.

AFFIRMED.