IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. PUMEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARIEA S. PUMEL, APPELLANT.

Filed September 9, 2025.    No. A-25-114.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Mona Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Mariea S. Pumel pled no contest to a single charge of delivering or with intent to deliver a controlled substance. The district court for Lancaster County convicted her of the offense and sentenced her to 12 to 24 years' imprisonment. On appeal, Pumel assigns that her sentence was excessive and claims her trial counsel was ineffective in three ways. For the reasons that follow, we affirm.

## II. BACKGROUND

On April 5, 2024, law enforcement responded to a reported drug overdose. The victim was revealed to be Pumel's niece, Essence Ironcloud. Ironcloud was taken to a nearby hospital where it was determined that she had overdosed on fentanyl. During a later interview with law enforcement at the hospital, Ironcloud said she had taken what she believed to be an oxycodone

- 1 -

pill given to her by Pumel. Because Pumel was incarcerated at the Lancaster County Jail for an unrelated matter, investigators interviewed her on June 14.

During this interview, Pumel initially denied giving Ironcloud anything, but then said she thought the pills were oxycodone. She eventually described how she gave Ironcloud two small blue "M30" pills the evening before her overdose. She stated that a third party handed her a bag containing five or six pills right before Ironcloud walked into the room. While Pumel possessed the bag, Ironcloud informed her that the third party owed her money. Pumel stated that giving Ironcloud the pills satisfied the debt. She also told Ironcloud to cut the pills in half before taking them. After Ironcloud left, Pumel gave the remaining pills to a fourth person who was in the room.

On October 23, 2024, Pumel was charged with one count of delivering or with intent to deliver a controlled substance, a Class II felony. On December 10, she pled no contest to this charge in exchange for the State not bringing another delivery charge against her and dismissing two other cases where she was charged with possession of a controlled substance. The district court accepted her no contest plea, convicted her of the offense, and ordered the completion of a presentence investigation report (PSR).

Notably, in her PSR interview, Pumel recounted a different version of events. Instead of saying that she gave Ironcloud the pills, she provided the following explanation:

> This guy had come over and he had a bunch of pills. He asked [Pumel] if she could do anything with them so she took them to look them up and found they were Percocet. She said she gave the pills back to him and told him she couldn't do anything with them. She explained that the guy then sold them to a girl who [was] in [her] apartment, which had the police saying she was involved. She said she was threatened with another possession with intent if she doesn't take the charges for the current offense. She said the situation is "f-ed up" and her attorney is acting like he doesn't want to fight it.

Pumel's sentencing occurred on February 13, 2024. While the sentencing concerned two cases, Pumel only appeals from the one. Therefore, we limit the recitation of facts to the current matter. The State addressed the court first and outlined how Pumel was attempting to minimize her crimes by denying that she knew the pills contained fentanyl and claiming she was not the one who gave them to Ironcloud. The State also articulated its belief that this was not the first time she gave drugs to people she knew because the PSR indicated that she did not see a problem with doing so. With this, the State requested Pumel serve an unspecified amount of time in jail.

Pumel's attorney then addressed the court and requested it take certain mitigating factors into account and impose a sentence of 2 to 4 years' imprisonment. Specifically, he stated that Pumel thought the pills were oxycodone, and that she would not have given them to Ironcloud if she knew they contained fentanyl. He also pointed out that she only handled the pills for a few seconds. Pumel then addressed the court and admitted to needing help. She apologized for her actions, articulated that she never meant to hurt anyone, and asked the court for mercy.

The court ultimately sentenced her to 12 to 24 years' imprisonment. Pumel now appeals.

## III. ASSIGNMENTS OF ERROR

Restated, Pumel assigns the district court erred by imposing an excessive sentence.

She also assigns that she received ineffective assistance of counsel because her trial counsel (1) failed to provide her with complete discovery; (2) pressured her to accept the plea offer; and (3) failed to convey her version of events at the sentencing hearing.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Pumel first assigns that the district court abused its discretion by imposing an excessive sentence. She essentially asserts the court failed to fully consider her background, the significant trauma she experienced as a child, and her need for mental health treatment.

Pumel was convicted of delivering or with intent to deliver a controlled substance, a Class II felony. A Class II felony is punishable by a minimum of 1 year imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Accordingly, her sentence is within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Pumel's argument essentially amounts to a request for this court to reweigh certain sentencing factors and determine whether the sentence is appropriate. But it is not the appellate court's function to conduct a de novo review of the record to determine what sentence it would impose. *Id.* At the sentencing hearing, the district court articulated that it reviewed Pumel's PSR and criminal history. It also stated that it considered the relevant statutory factors, her "tough upbringing," "the trauma [she] experienced," her substance abuse issues, and the prior treatment

she received in jail. Because we do not reweigh the district court's consideration of Pumel's past on appeal, we determine the district court did not abuse its discretion.

We also determine the length of Pumel's sentence does not constitute an abuse of discretion. On the Level of Service/Case Management Inventory, Pumel scored as a "Very High" risk to recidivate. She scored in the "Very High" risk level for the antisocial pattern category, the "High" risk level for the criminal history, education/employment, leisure/recreation, companions, alcohol/drug problem, and procriminal attitude categories, and the "Medium" risk level for the family/marital category.

She also possesses a lengthy criminal history. Disregarding various traffic offenses and two juvenile adjudications, she has been convicted of 46 charges since 2003. In 2003, she was convicted of dog running at large. In 2004, in two separate incidents, she was convicted of having an improper registration on a motor vehicle, failing to have proof of financial responsibility, occupation protection system, and driving while suspended. In 2005, in three separate incidents, she was convicted of driving while suspended twice, possessing drug paraphernalia, and failing to appear.

In 2006, she was convicted of driving while suspended, backing a motor vehicle without safety, leaving the scene of an accident, and failing to appear. In 2011, in two separate incidents, she was convicted of assaulting, striking, or causing bodily injury; DUI first offense; and having an open alcohol container. In 2012, she was convicted of disturbing the peace. In 2013, in three separate incidents, she was convicted of theft by shoplifting under $200 twice and careless driving. In 2014, in two separate incidents, she was convicted of third degree assault, theft by unlawful taking under $200, and second degree forgery between $300 and $1,000. In 2015, in four separate incidents, she was convicted of disturbing the peace; refusing to comply with an order from a police officer; reporting false information; theft by shoplifting, second offense, under $500; and assaulting, striking, or causing bodily injury.

In 2016, in seven separate incidents, Pumel was convicted of driving while suspended; failing to appear; resisting arrest, first offense; trespassing upon property of another; issuing a bad check; theft by shoplifting under $500; possession of a firearm by a prohibited person; possession or transportation of a firearm; and possession of a controlled substance. In 2017, in three separate incidents, she was convicted of disturbing the peace, attempted possession of a controlled substance, driving while suspended, and failing to have proof of financial responsibility. In 2024, in four separate incidents, she was convicted of the charges in the current matter, possession of a controlled substance, loitering and trespass, refusing to comply with an order from a police officer, and failing to appear twice.

Given Pumel's high risk of recidivism, lengthy criminal history, and the reality that she gave out a potentially fatal dose of fentanyl, we determine the district court did not abuse its discretion in sentencing her to 12 to 24 years' imprisonment.

2. INEFFECTIVE ASSISTANCE

Pumel next assigns her trial counsel was ineffective because he (1) failed to provide her with complete discovery; (2) pressured her to accept the plea offer; and (3) failed to convey her version of events at the sentencing hearing.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Anthony*, 29 Neb. App. 839, 961 N.W.2d 545 (2021). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Clark, supra*.

(a) Failure to Provide Discovery

Pumel first assigns that her trial counsel was ineffective because he failed to provide her with an opportunity to review the video of her interview with law enforcement. She asserts that although she admitted to giving Ironcloud the pills during this interview, she never actually did so. With this, she essentially contends that if she was given an opportunity to review the video before pleading no contest, she could have discussed the discrepancies in her stories with her attorney. She also contends her attorney could have investigated to see if the video had been altered by law enforcement.

We determine the record is sufficient to find that there is not a reasonable probability Pumel would have insisted on going to trial if she had been given an opportunity to watch the video of her interview. The video of her interview shows her admitting to giving Ironcloud two pills, which she believed to be oxycodone, the evening before she overdosed. Although Pumel claims she would have been in a better position to discuss the case with her attorney if she had watched the video, she fails to explain how watching her admit to the crime would have made her insist on going to trial. Consequently, Pumel will be unable to demonstrate she was prejudiced by this alleged error.

(b) Pressure to Accept Plea Agreement

Pumel next assigns that her trial counsel was ineffective because he pressured her to accept the plea agreement. Although she admits that she told the court she was entering her plea of no contest freely and voluntarily and did not need additional time to speak with her attorney, she now

asserts that she believed she needed to answer those questions affirmatively to receive the plea agreement.

We determine the record is sufficient to refute this claim on direct appeal. At the plea hearing, Pumel confirmed that she had adequate time to speak with her attorney, there was nothing more she wanted to discuss with him that could help her case, and that she was satisfied with his performance. She also confirmed that she had not received any improper promises in exchange for her pleading no contest and that she was entering her plea freely and voluntarily. As the Nebraska Supreme Court has noted, a defendant cannot secure relief by recanting assurances made to the trial court during the sanctity of a full and formal court proceeding "'after the doors of the prison clang shut.'" *State v. Vanderpool*, 286 Neb. 111, 118, 835 N.W.2d 52, 58 (2013) (quoting *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)). Because Pumel's specific representations to the district court refute her claim, we determine this assignment fails.

### (c) Failure to Assert Her Version of Events

In her last assignment, Pumel asserts her trial counsel was ineffective because he failed to articulate her version of events at the sentencing hearing. Specifically, she argues that he should have told the court she did not provide the pills to Ironcloud but instead handed them back to the person who handed them to her.

We determine the record is sufficient to find that Pumel will be unable to demonstrate she was prejudiced by this alleged error. As noted previously, the district court articulated on the record that it had reviewed the PSR. Notably, the PSR contained Pumel's version of events where she claimed that she did not give Ironcloud the pills. The court even acknowledged this when it stated, "I know you have a different version of events -- but ultimately, you gave fentanyl to someone that led to an overdose." Because the record demonstrates the court already knew about, and had considered her differing version of events, we determine there is not a reasonable probability that a different outcome would have occurred if her attorney had articulated her version of events at the sentencing hearing. Therefore, we conclude this assignment fails.

## VI. CONCLUSION

We determine the district court did not abuse its discretion in sentencing Pumel to 12 to 24 years' imprisonment. We next determine she will be unable to show she was prejudiced by her attorney not providing her with a video of her interview with law enforcement and not articulating her version of events at the sentencing hearing. We also determine her claim that she was pressured to take the plea agreement is refuted by the record. For these reasons, the order of the district court is affirmed.

AFFIRMED.